[No. 47067–7. En Banc. January 7, 1982.]

RAINIER BANCORPORATION, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Graham & Dunn,* by *James Wm. Johnston* and *Kent Whiteley,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for respondent.

STAFFORD, J.—The sole question is whether Rainier Bancorporation (Rainier) may deduct the income received "from investments and the use of money as such" from the amount to be paid under the Business and Occupation (B

& O) tax. We hold that under RCW 82.04.430(1) Rainier is engaged in a "financial business" and thus is ineligible for the statutory deduction.

Rainier is a bank holding company registered with the Governors of the Federal Reserve System pursuant to the Bank Holding Company Act of 1956, 12 U.S.C. § 1844. It has three wholly owned subsidiaries: Rainier Bank, Rainier Mortgage Company and Rainier Credit Company. Rainier's business activities at issue during the relevant period were the receipt of dividends and interest from some marketable securities which were in the process of being liquidated, gains on the sale of securities and interest received from its subsidiaries for financing in the form of equity capital, loans and advances.

The Department of Revenue (Department) assessed B & O tax deficiencies against Rainier for two contiguous audit periods, the first running from January 1, 1972 through December 31, 1975, and the second from January 1, 1976 through March 31, 1978.

The disputed B & O tax deficiencies, amounting to $413,875.03, were assessed under RCW 82.04.290 which requires everyone doing business in this state to pay a tax of 1 percent of the business' gross profits unless otherwise exempted. Rainier claimed a deduction under former RCW 82.04.430(1), which reads as follows:

> In computing tax there may be deducted from the measure of tax the following items:
> (1) Amounts derived by persons, other than those engaging in banking, loan, security, or other financial businesses, from investments or the use of money as such, and also amounts derived as dividends by a parent from its subsidiary corporations[.]

The Department disallowed the deduction.

Rainier petitioned the Department for correction of the assessments, but the petitions were denied. Thereafter, Rainier paid the amount assessed, plus interest, and brought this refund action pursuant to RCW 82.32.180. The parties presented cross motions for summary judgment

based on stipulated facts. Both parties agree the income at issue was derived "from investments or the use of money as such".[1] The Department's motion was granted and judgment was entered against Rainier.

We affirm the decision of the trial court and hold that, under the narrow facts before us, Rainier is engaged in a "financial business" and as such does not qualify for the B & O tax deduction set forth in RCW 82.04.430(1).

In so holding, we turn first to the rules of statutory construction applied by this court in determining whether certain other taxpayers were engaged in a "financial business" as used in RCW 82.04.430(1). *See John H. Sellen Constr. Co. v. Department of Revenue,* 87 Wn.2d 878, 558 P.2d 1342 (1976). In *Sellen,* the Department assessed the John H. Sellen Construction Company, the Olympia Brewing Company, King County Medical Blue Shield, Blue Cross Washington–Alaska, Inc., the Acacia Memorial Park, and Acacia's Permanent Care Fund on their investment income. We held the taxpayers were not "financial businesses" as defined by RCW 82.04.430(1) and, therefore, their investment income was not subject to the B & O tax. In deciding the case, we declined to conclusively define the term "financial business". We merely ruled that those particular taxpayers did not come within the phrase "financial business". The analytical framework employed in *Sellen,* however, causes us to conclude that Rainier is a "financial business".

In *Sellen,* we began our analysis by stating that, in the absence of a contrary statutory definition, the phrase "financial business" must be given its ordinary and common meaning. *See Sellen,* at 882. *See also Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979); *Pope & Talbot, Inc. v. Department of Revenue,*

---

[1]The claimed deductions at issue, amounting to approximately $35 million, were confined to interest received from Rainier's subsidiaries on advances and loans, along with dividends and interest on Rainier's portfolio of marketable securities, interest on out-of-state municipal bonds, and gain on the sale of securities.

90 Wn.2d 191, 580 P.2d 262 (1978). We thereupon pointed out that the common meaning of the phrase "contemplates a business whose primary purpose and objective is to earn income through the utilization of significant cash outlays." *Sellen,* at 882.[2]

In this regard, one indicia of Rainier's status is the fact that of the approximately $60 million lent by Rainier to its subsidiaries during the relevant audit periods, less than one-half of the funds came from Rainier's surplus funds. Most of the money loaned was borrowed from outside sources.

■ Next, by applying the rule of ejusdem generis in interpreting the deduction statute, we find that Rainier falls within the term "other financial business". In *Sellen* we quoted the definition of the rule found in *State v. Thompson,* 38 Wn.2d 774, 777, 232 P.2d 87 (1951):

> [G]eneral terms appearing in a statute in connection with precise, specific terms, shall be accorded meaning and effect only to the extent that the general terms suggest items or things *similar to those designated by the precise or specific terms.* In other words, the precise terms modify, influence or restrict the interpretation or application of the general terms where both are used in sequence or collocation in legislative enactments.

(Italics ours.) *Sellen, supra* at 883–84. Based on the foregoing we went on to say in *Sellen:*

---

[2]In *John H. Sellen Constr. Co. v. Department of Revenue,* 87 Wn.2d 878, 558 P.2d 1342 (1976), we made note of the amount of investment income as compared to the total gross income of each taxpayer. In each instance, the investment income constituted less than 1 percent of the total. We observed that considering this, and other factors, the taxpayers clearly were not "financial businesses". We did not, however, attempt to adopt a "percentage test" in arriving at our conclusion.

In the instant case, the interest income from the subsidiaries on their loans amounted to 41.1 percent of Rainier's gross income during the first audit period and 58.1 percent during the second audit period. We note, as we did in *Sellen,* that this alone is only one of many factors in determining whether Rainier is an entity which has, as its primary purpose and objective, the earning of income through cash outlays. We do not hereby adopt a "percentage test", however.

Thus, the generic term "other financial businesses" must be read in conjunction with the terms "banking, loan, and security." The generic term only extends to businesses that are *comparable* to one of the specific categories but technically not falling within one of the three categories.

(Italics ours.) *Sellen,* at 884.

■■ Technically, Rainier does not fall within the specific definition of a banking, loan, or security business and is not so regulated pursuant to RCW Titles 30, 31, or 33. Rather, Rainier is granted the authority to borrow and loan money and hold securities by the Washington business corporation act. *See* RCW 23A.08.020. Rainier's activities do not include loaning money to the public at large and are not identical to those of a bank, loan or security business. But, by loaning money to its subsidiaries Rainier's activities are *similar* or *comparable* to those of the aforementioned businesses.

Finally, it is important to remember that tax deductions must be narrowly construed. *Cf. Evergreen–Washelli Memorial Park Co. v. Department of Revenue,* 89 Wn.2d 660, 574 P.2d 735 (1978) (interpreting RCW 82.04.390, which exempts proceeds derived from the sale of real estate from the business and occupation tax). This, coupled with the fact that Rainier's activities are similar or comparable to that of a banking, loan or security business, compels us to conclude that Rainier is ineligible for the deduction from the B & O tax, as found under RCW 82.04.430(1).

Our decision today is limited to holding companies, such as Rainier, which are engaged in a "financial business". We venture no opinion on the question of whether a holding company that makes its loans *solely* out of its own surplus funds is subject to the B & O tax.

We affirm the trial court.

ROSELLINI, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

DORE, J. (concurring)—I concur that pursuant to former RCW 82.04.430(1), Rainier Bancorporation is engaged in a

"financial business" and, therefore, is ineligible for the statutory deduction provided therein. I believe it is immaterial, in assessing such B & O tax, whether Rainier makes its loans *solely* or *partially* out of its own funds.

UTTER, J., concurs with DORE, J.

DOLLIVER, J. (dissenting)—If the rule to be garnered from the majority is "bank holding companies are going to pay the business and occupation tax," then I suppose this case has some value. It will at least increase state revenues. The principles which the majority uses to reach this result are difficult to discern. Just as "Professor" Harold Hill in Meredith Wilson's *Music Man* declared that "River City's going to have a boys' band," so the Department of Revenue has determined Rainier Bancorporation's going to have a business and occupation tax.

How does the majority find that plaintiff is a "financial institution"? It states that "by loaning money to its subsidiaries Rainier's activities are *similar* or *comparable* to those of the aforementioned businesses [banks, loans, securities]." Majority opinion, at 674. Then, in its penultimate paragraph at page 674 the majority says:

> Finally, it is important to remember that tax deductions must be narrowly construed. *Cf. Evergreen–Washelli Memorial Park Co. v. Department of Revenue,* 89 Wn.2d 660, 574 P.2d 735 (1978) (interpreting RCW 82.04.390, which exempts proceeds derived from the sale of real estate from the business and occupation tax). This, coupled with the fact that Rainier's activities are similar or comparable to that of a banking, loan or security business, compels us to conclude that Rainier is ineligible for the deduction from the B & O tax, as found under RCW 82.04.430(1).

Although the question of whether plaintiff is entitled to the deduction, *i.e.,* whether it is exempt from being classified as not engaged "in banking, loan, security, or other financial businesses" (former RCW 82.04.430(1)), must be "narrowly construed" (majority opinion, at 674), simply to

utter the phrase "narrowly construed" as a talisman is not enough. Just because the claimed exemption is not clearly spelled out in RCW 82.04.430(1) hardly gives rise to the denial of the exemption. *See John H. Sellen Constr. Co. v. Department of Revenue,* 87 Wn.2d 878, 558 P.2d 1342 (1976). There must be more. But since nothing more is offered by the majority, it must be that the real basis for decision is that "Rainier's activities are *similar* or *comparable* to" those of a banking, loan or security business. Majority opinion, at 674.

But having established its "rule" the majority, perhaps realizing the enormity of what it has done, slips away with "Our decision today is limited to holding companies, such as Rainier, which are engaged in a 'financial business'." The principle followed to reach this limitation appears to elude even the majority. At least no principle is included in its opinion. What the majority must have recognized, of course, is that its "rule" runs directly into the problem pointed out by the court in *Sellen.* In that case, the Department of Revenue attempted to bring a construction company, a brewery, a health care business, and a cemetery association within the ambit of a "financial business." As the court said in *Sellen,* at page 883:

> If we adopt appellant's interpretation of RCW 82.04-.430(1), then few taxpayers, if any, making incidental investments of surplus funds could receive the deduction.

Under the majority position, a couple who borrows a substantial amount on say, an insurance policy, and lends it to a child with interest for that child's education, can expect a visit from the State Department of Revenue.

Concededly the majority does try to distinguish *Sellen* by pointing out that (1) of the money lent by plaintiff to its subsidiaries over one-half was borrowed from outside sources, and (2) a high percentage of plaintiff's income was derived from the interest on the loans to its subsidiaries. As to (1) its relevance is never discussed by the majority nor does a search of the statutes reveal any relevance. With regard to (2), the majority, although it appears to flirt with

the idea, declares that it does "not hereby adopt a 'percentage test'". Majority opinion, at 673 n.2. In neither instance, however, does the majority show how these facts, although interesting, tend to make plaintiff a financial institution. No connection is made between the fact and the definition. Both (1) and (2) are simply distinctions without a difference. They are facts but hardly principles.

What we have here is an interpretation of a statute which has been maintained by the Department of Revenue for over 30 years. The Department is then seized by a vision of new revenue particularly as it might come from a bank holding company and, without the bother of going to the legislature, changes its rule.

While it does not contest that it had not in over 30 years included holding companies of any kind under the definition of "financial institutions", the Department now says in its brief:

> Sellen approved the Department's prior construction that the incidental investment of surplus funds did not constitute a financial business. However, the Sellen court said nothing about the Department's prior construction with regard to borrowing and lending money.

Put in its most favorable light, this current declaration by the Department can only be called disingenuous. To suggest that all along the Department's position, based on its previous declaration as to the interpretation of RCW 82.04.430(1), has been that borrowing and lending of the type engaged in by plaintiff brings it under the statute places too great a strain on credulity.

In fact, the test which had been used by the Department of Revenue and the only one which makes any sense and saves it from its tendentious position in Sellen and this case is whether the activity is one which deals with the public. The single relevant characteristic, unmentioned by the majority, which distinguishes an entity engaged in banking, loans or securities is that it is in the marketplace in a public, competitive business. Thirty–five years after the passage of RCW 82.04.430(1) this was clearly and

explicitly recognized by the Department.

> But it does not follow that every act of business or every investment and grant of the use of money is held to be financial business. . . . Where the activities involved are essentially in competition with financial businesses and this is a regular part of the taxpayer's normal business practice, the department believes that the activities constitute financial business and are subject to tax.

Department of Revenue, Excise Tax Bull. No. 368.04.224 (June 12, 1970). Plaintiff, of course, is not engaged in a public, competitive enterprise.

Defendant quotes with favor the *Sellen* court's views on the meaning of "financial businesses":

> [T]he common meaning of the phrase contemplates a business whose primary purpose and objective is to earn income through the utilization of significant cash outlays.

*Sellen,* at 882. Although the majority states that in *Sellen* "we declined to conclusively define the term 'financial business'" (majority opinion, at 672), at the very least the *Sellen* court held that regardless of what other characteristics "financial businesses" may have, the earning of income would have to be a "primary purpose and objective." *Sellen,* at 882.

In this case it is undisputed that the *purpose* of the loans to its subsidiaries by plaintiff is not to "earn income" but rather to provide the subsidiaries with the funds they require in order to operate their business to the best advantage. This being so, it is hardly a "financial business" whose "primary purpose and objective is to earn income through the utilization of significant cash outlays." *Sellen,* at 882. By this court's own definition of what the term contemplates, the plaintiff does not qualify as a "financial business".

Maybe bank holding companies should be subjected to the business and occupation tax; perhaps they were overlooked by or unknown to the drafters of the statute. Certainly their gross revenues are a tempting source of income. The way to apply the tax is by action of the legislature. It

should not be done by the Department of Revenue and this court ignoring precedent, avoiding rational analysis, and abandoning principle.

I dissent.

BRACHTENBACH, C.J., concurs with DOLLIVER, J.