208 P.3d 5 (2009)
BELLEAU WOODS II, LLC, a Washington limited liability company, Respondent,
v.
CITY OF BELLINGHAM, a municipal corporation, Appellant.
No. 62041-0-I.
Court of Appeals of Washington, Division 1.
May 26, 2009.
*7 Jeff H. Capell, Tacoma, WA, for Appellant.
Gregory Thulin, Bellingham, WA, Margarita Latsinova, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 This appeal by the City of Bellingham requires us to say what "mitigation" means in a new park impact fee ordinance. The city imposed the fee against a landowner who had already contributed land for a neighborhood trail by way of an easement over wetlands. Considering the ordinance as a whole and indicators of legislative intent, we conclude the exemption for past mitigation does not apply. The city is entitled to impose the fee so long as the landowner is given credit for the value of the previous contribution.
¶ 2 Belleau Woods II, LLC is the landowner. Upon granting the company's application for building permits in June 2007, the city imposed a park impact fee of $111,215.13 under a new ordinance that had been enacted the previous year. Belleau Woods paid under protest and appealed to the City of Bellingham Hearing Examiner. The hearing examiner construed the ordinance in favor of the city and upheld the imposition of fees. Belleau Woods appealed to the superior court and obtained an order requiring refund of the fees. The matter comes to this court as an appeal by the city under the Land Use Petition Act, RCW Chapter 36.70C. We stand in the shoes of the superior court and review the hearing examiner's action on the basis of the administrative record. Wells v. Whatcom County Water Dist. No. 10, 105 Wash.App. 143, 150, 19 P.3d 453 (2001).
¶ 3 According to unchallenged findings of fact entered by the hearing examiner, Belleau Woods proposed to enter into a planned development contract with the city to develop 7.39 acres with apartments in Area 16 of the Guide Meridian Neighborhood in north Bellingham. The city code states that Area 16 is zoned for planned residential units and mixed use buildings, provided that the following "prerequisite consideration" is met: "contribution of land or fees for neighborhood park and trail system." Bellingham Municipal Code (BMC) 20.00.08. The city code explains that prerequisite considerations are items that have to be addressed for any development proposal which is discretionary or semi-discretionary in nature. They are recommendations on what should occur or what will need to happen prior to some future level of development in an area. They usually point out necessary capital improvements that will have to be constructed. BMC 20.06.030. The requirement to support neighborhood parks and trails in Area 16 was a condition imposed as a result of a rezone of the area for higher density development. The proposed planned development contract for the Belleau Woods site incorporated the condition into Section 20:
Impact fees for both park and trails, as determined by the Parks and Recreation Department for consistency with the Guide Meridian Neighborhood Plan Prerequisite Condition, shall be paid prior to building permit issuance. The Parks and Recreation Department may accept construction of improvements or land dedication in lieu of fee payment.
¶ 4 The contract also referred in Section 14 to city code requirements for protecting wetlands and streams. It stated that wetland and buffer mitigation "shall be provided in accordance with a City approved wetland/buffer mitigation plan."
¶ 5 The city's open space plan showed a future trail in the Guide Meridian Neighborhood, and the city was already in the process of obtaining easements for it. The city wanted *8 to put the trail through the wetland buffer in the Belleau Woods property. The trail was included in the Parks Capital Facilities plan.
¶ 6 Tim Carey, the manager and sole member of Belleau Woods, proposed to give the city a conservation easement for a public trail and for protection of wetlands to satisfy Section 20 of the contract. Carey corresponded with the parks department in May 2004 to find out if they would accept his proposed land dedication in lieu of payment. The parks department, through Leslie Bryson, responded that the fee for trails would be waived in consideration of land dedicated for a future trail. She informed Carey that the "total park fee" would be $8,912.34. She explained how the fee was calculated. It was based on the acreage of the property and the increased need the development would create for neighborhood parks and trails.
¶ 7 Carey then corresponded with a member of the city planning staff asking to have the amount of $8,912.34 incorporated into Section 20 of the planned development contract. The staff person, after consulting with Bryson, decided not to put the specific amount into the contract because Bryson advised her that the amount might change if there were time delays between contract approval and actual development.
¶ 8 Carey and the city executed the planned development contract, effective in July 2004. Carey provided the city with a conservation easement. The easement included some 167,000 square feet of regulated wetland and buffer area that could not be developed without providing mitigation. About 6,500 square feet was designated within the conservation easement for the public trail that the city planned to construct in the future.
¶ 9 Almost two years passed. In February 2006, the City of Bellingham adopted a new chapter of the Bellingham Municipal Code providing for the collection of park impact fees at the time of building permit issuance for residential development activity.
¶ 10 Impact fee ordinances are authorized by RCW 82.02.050. Bellingham's park impact fee ordinance was adopted "as a means of mitigating residential development's impacts upon the parks and recreational facilities in the City." BMC 19.04.010(E). Its purpose is "to assure that new development bears a proportionate share of the cost of capital expenditures necessary to provide parks, recreation, and open space improvements in Bellingham." BMC 19.04.030(B). The ordinance also states that its provisions are to be liberally construed and interpreted to effectively carry out its purpose. BMC 19.04.040. The fees are calculated based on the density of the development. BMC 19.04.050(M).
¶ 11 Of significance to this case, where a developer has already mitigated park impacts pursuant to an agreement with the city, the ordinance provides an exemption from the new fees:
A. The following development activities shall be exempted from payment of impact fees:
. . .
6. Previous mitigation where:
. . .
b. Any development activity for which park impacts have been mitigated pursuant to an agreement entered into with the City to pay fees, dedicate land or construct or improve park facilities, unless the terms of the agreement provide otherwise; provided that the agreement predates the effective date of fee imposition as provided herein.
BMC 19.04.130(A)(6)(b).
¶ 12 The ordinance goes on to provide for credit against park impact fees for dedications of land that predate the ordinance if they were made pursuant to the capital facilities plan:
Park land and/or park capital improvements may be offered by the developer as total or partial payment of the required impact fee. Development activity for which park impacts were intended to be mitigated pursuant to a condition of plat or PUD approval, dedications of land or construction of, or improvement to park facilities that pre-date this ordinance, unless the condition of the plat or PUD approval provides otherwise, may also be considered *9 for credit hereunder; provided that any such mitigation measure was made pursuant to the capital facilities plan (CFP). Any new offer must specifically request or provide for a park impact fee credit. If the Parks Director accepts such an offer, whether the acceptance is before or after the effective date of this ordinance, the credit shall be determined and provided in the following manner:
A. Credit for the dedication of land shall be valued at fair market value established by private appraisers acceptable to the City. Credit for the dedication of park land shall be provided when the property has been conveyed at no charge to, and accepted by the City.
BMC 19.04.140. This section of the ordinance tracks the authorizing state statute which requires a city to give a developer credit against an impact fee for a previous dedication of property required as a condition of approval. See RCW 82.02.060(3).
¶ 13 In the fall of 2006, Belleau Woods applied for building permits to develop its acreage in accordance with the planned development contract. Some months later, Belleau Woods received notice that the permits were ready. On June 27, 2007, Carey contacted Bryson at the Parks Department to say he was surprised when he received the fee sheet for the building permits to find that it imposed a park impact fee in the amount of $111,215.13. Carey said he thought the total park fee was supposed to be $8,912.34 as they had agreed in their May 2004 correspondence about the Section 20 requirement. Bryson told Carey that he would have to pay a park impact fee as there is no vesting for fees paid toward mitigating park impacts:
In 2006, the City implemented a Park Impact Fee. The fees you were quoted in 2004 were for the West Bakerview Rezone requirement. While you don't have to pay both, you do have to pay the higher amount, as there is no vesting for the Park Impact Fee.
Bryson said she would review the background information on the project "to see if there is any credit available on this project for the park impact fee."
¶ 14 After reviewing the file, Bryson wrote to Carey again. The fee of $8,912.34 quoted to him in 2004, she reiterated, was not a park impact fee; it was a condition of a rezone which increased development potential in the area:
I do have a worksheet in my files indicating the prerequisite amount under this section would have been $8912.34 had it been paid in 2004. However, in 2006 the City Council adopted a Park Impact Fee Ordinance. The fee is due on any building permit application applied for after the effective date of the ordinance. (March 14, 2006). There is no prior vesting for the fee based on development approvals. If you had already paid the neighborhood prerequisite amount, you would only get a credit toward the Park Impact Fees equal the amount paid for the Prerequisite condition.
¶ 15 Belleau Woods paid the impact fee of $111,215.13 under protest and appealed to the hearing examiner. A hearing was held on September 19, 2007. During the hearing, the parties had different interpretations of what we shall refer to as the A6b exemption. BMC 19.04.130(A)(6)(b). Belleau Woods argued that its previous dedication of land pursuant to Section 20 of the contract fell within the exemption for any "development activity for which park impacts have been mitigated pursuant to an agreement entered into with the City." The City argued that the previous dedication of land for a trail had only partially mitigated the park impacts of the development.
¶ 16 On October 12, 2007, the hearing examiner issued a decision denying Belleau Woods' appeal. The examiner first explained that entering into the planned contract did not give Belleau Woods a vested right to develop the property exempt from the later-enacted park impact fee ordinance. The examiner then determined that the previous dedication of land for a trail did not satisfy the terms of the A6b exemption because it did not mitigate all of the park impacts of the development. The dedication under Section 20 of the contract mitigated the impacts only to the extent of satisfying the neighborhood park and trail requirements of Area 16:

*10 Compliance with Section 20 does not provide for the mitigation of park impacts as contemplated in BMC 19.04.130(A)(6)(b). The park and trail component of Section 20 was imposed as a condition of a rezone to provide for neighborhood parks and trails within a limited, 216 acre area.
¶ 17 The examiner reached this conclusion in part by reading the A6b exemption in conjunction with the section of the ordinance that immediately follows it:
BMC 19.04.130(A)(6)(b) must be read in conjunction with other provisions of the ordinance. BMC 19.04.140 provides for credit against park impact fees for dedications or improvements made in accordance with conditions of a plat or planned development approval. The ordinance clearly contemplates that some mitigation measures made pursuant to agreements or requirements will exempt development from payment of impact fees and others will result in a credit against the fees. In the context of the other exemptions contained in BMC 19.04.130 it is unlikely that 19.04.130(A)(6) was intended to fully exempt development activity from payment of impact fees if any park impact had been mitigated in accordance with a prior agreement. The language of the ordinance does not require such an interpretation.
¶ 18 The hearing examiner ended by ruling that park "impact fees for the subject development shall be paid in accordance with BMC Chapter 19.04, with credit for qualifying facilities, including, at a minimum, the trail easement."
¶ 19 On October 22, 2007, the city amended BMC 19.04.130(A)(6)(b) by adding the phrase: "Partial mitigation under any such agreement shall be credited in accordance with BMC 19.04.140." According to the summary statement included in the agenda for the city council, the amendment was introduced to "conform to the current state of Washington case law interpreting impact fees and to clarify the City's original intent regarding one class of exemption from park impact fees."
¶ 20 Upon hearing Belleau Woods' petition for review, the superior court reversed the decision of the hearing examiner as an erroneous interpretation of BMC Chapter 19.04. The court found that the A6b exemption was unambiguous and Belleau Woods had fully mitigated the park impacts of the development by complying with Section 20 of the planned contract. The court ruled that the recent amendment providing credit for partial mitigation was inapplicable to the planned contract. The court ordered the city to refund the park impact fees collected from Belleau Woods less the sum of $8,912.34.
¶ 21 The city appeals. There is no challenge to the findings of fact entered by the hearing examiner. Accordingly, we review the hearing examiner's conclusions de novo, just as the superior court did. Thornton Creek Legal Def. Fund v. City of Seattle, 113 Wash.App. 34, 47, 52 P.3d 522 (2002). Two pertinent grounds on which relief from the decision of the hearing examiner may be granted are when: (1) the land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise; and (2) the land use decision is a clearly erroneous application of the law to the facts. RCW 36.70C.130(1)(b) and (c).
¶ 22 Statutory construction is the central issue, but we first dispose of arguments on the periphery. The city contends that Belleau Woods is erroneously claiming to have a vested right to make only the payments required by Section 20 of the contract. Under RCW 58.17.033, a vesting statute, a development is subject to the "land use control ordinances" in effect at the time the application was perfected. But this court has already decided that impact fees do not affect physical aspects of a development. Therefore, they are not land use control ordinances. The impact fees simply add to the cost of a project, and the vested rights doctrine does not protect the developer against such additional cost. Pavlina v. City of Vancouver, 122 Wash.App. 520, 529-30, 94 P.3d 366 (2004); New Castle Inv. v. City of LaCenter, 98 Wash.App. 224, 235-36, 989 P.2d 569 (1999), rev. denied, 140 Wash.2d 1019, 5 P.3d 9 (2000). Belleau Woods acknowledges these precedents and agrees they are applicable, *11 so it is unnecessary to go any further into the law of vesting under RCW 58.17.033.
¶ 23 Belleau Woods does attempt to achieve a vested right by characterizing the planned development contract as a "development agreement" of the type allowed by RCW 36.70B.170(1).[1] Under this statute, a development agreement controls all development standards during the term of the agreement. Belleau Woods argues that the statute bars the imposition of park impact fees after the agreement is signed.
¶ 24 Belleau Woods concedes that its argument based on RCW 36.70B ("Local Project Review") was not presented to the hearing examiner, nor was it argued on appeal in the superior court. Belleau Woods invokes the principle that an appellate court can affirm on any ground sufficiently developed in the record and has inherent authority to consider a statute or court rule for the first time on appeal. Plein v. Lackey, 149 Wash.2d 214, 222, 67 P.3d 1061 (2003); Bennett v. Hardy, 113 Wash.2d 912, 918, 784 P.2d 1258 (1990). The problem with applying this principle here is that the record is insufficiently developed. A city or county can approve a development agreement only by ordinance or resolution after a public hearing. RCW 36.70B.200. The record does not show that this requirement was met.
¶ 25 The city attached to its reply brief two declarations from city officials to the effect that no public hearing occurred and no ordinance or resolution was passed approving of the planned development contract for Belleau Woods. We grant the motion by Belleau Woods to strike these declarations. But we also decline to consider the assertion by Belleau Woods that its planned development contract is an agreement created under RCW 36.70B.170(1). The argument was not made below and the record is insufficient to support that claim. Consequently we do not decide whether later-enacted park impact fees can properly be imposed on property that is subject to a "development agreement."
¶ 26 We therefore conclude that the hearing examiner was correct in ruling that Belleau Woods had "no vested right to develop Belleau Woods II exempt from the fees adopted subsequent to the Planned Contract application."
¶ 27 The central issue remaining is whether the hearing examiner correctly interpreted the A6b exemption. Statutory construction is a question of law reviewed de novo. The court's fundamental objective is to ascertain and carry out the intent of the legislative body. If the statute's meaning is plain on its face, the court must give effect to that meaning. As part of the determination of whether a plain meaning can be ascertained, it is appropriate to look at the language in the context of the statutory scheme as a whole. The "plain meaning" is thus derived from all that the legislative body has said in the statute and related statutes which disclose legislative intent about the provision in question. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-12, 43 P.3d 4 (2002). If the language of the statute is plain, that ends the court's role. Cerrillo v. Esparza, 158 Wash.2d 194, 205-06, 142 P.3d 155 (2006). But if the statute remains susceptible to more than one reasonable meaning after this inquiry, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history. Dep't of Ecology, 146 Wash.2d at 12, 43 P.3d 4.
¶ 28 The A6b exemption is for any "development activity for which park impacts have been mitigated pursuant to an agreement." BMC 19.04.130(A)(6)(b). The dispute is the meaning of the phrase "have been mitigated." The city argues that the A6b exemption applies only when all park impacts *12 of the development have been mitigated, not just those localized to the immediate neighborhood. Belleau Woods argues that the exemption applies if any of the park impacts have been mitigated.
¶ 29 The word "mitigate" is defined as "to make less severe, violent, cruel, intense, painful," Webster's Third New International Dictionary 1447 (3d ed.1986); or to "make less severe or intense," Black's Law Dictionary 1023 (8th ed.2004). Relying on such dictionary definitions, Belleau Woods argues that "mitigation" plainly connotes activity that is less than complete. Under this interpretation, development is exempt from the new ordinance when the developer has engaged in activity that to some extent lessens, alleviates, minimizes the park impacts of the development.
¶ 30 The city agrees that some of the synonyms for "mitigate," such as "diminish" and "reduce," imply that impacts are mitigated when they are minimized rather than completely eliminated. But the city points out that other synonyms for the term "mitigate," such as "abate" and "alleviate," connote full and complete elimination of the impacts. The city thus argues that the exemption is not free of ambiguity and dictionary definitions are not dispositive as to its meaning.
¶ 31 The exemption in BMC 19.04.130(A)(6)(b) must be read together with the rest of the ordinance, as the context may illuminate the meaning of statutory language. Dep't of Ecology, 146 Wash.2d at 9-12, 43 P.3d 4. The very next section of the ordinance, BMC 19.04.140, allows credit against a park impact fee to be given for any development activity "for which park impacts were intended to be mitigated pursuant to a condition of plat or PUD approval, dedications of land or construction of, or improvement to park facilities that pre-date this ordinance." Belleau Woods points out that the wording of Section .140 differs from the wording of Section.130 in several respects. But Belleau Woods does not show that the differences are material to construing the A6b exemption. If BMC 19.04.130(A)(6)(b) gave a full exemption from park impact fees whenever a developer had previously contributed any land or money for parks pursuant to a condition of plat approval, there would be no need to provide a credit for such a contribution as is done by BMC 19.04.140. When the A6b exemption is read along with the provision for credit, Belleau Woods' attempt to discern its plain meaning from dictionary definitions becomes far less plausible.
¶ 32 Also militating against the "plain meaning" interpretation advocated by Belleau Woods is the amendment adopted by the city council on October 15, 2007. We view this amendment as part of the entire statutory scheme even though it was not enacted until after the dispute arose. Where a legislative enactment has not been interpreted by an appellate court to mean something different and where the original enactment was ambiguous to the point that it generated dispute as to what was intended, a subsequent amendment can enlighten courts as to a statute's original meaning. Ravsten v. Department of Labor & Indus., 108 Wash.2d 143, 150-51, 736 P.2d 265 (1987).
¶ 33 The council clarified its original intent when it amended BMC 19.04.130(A)(6)(b) by adding the phrase: "Partial mitigation under any such agreement shall be credited in accordance with BMC 19.04.140." To the extent former BMC 19.04.130(A)(6)(b) might be interpreted as exempting a developer who previously had done any mitigation of park impacts, the amendment indicates the council's intention that partial mitigation would receive partial credit, not a full exemption. A court should construe each part or section of a statute in connection with every other part to harmonize the statute as a whole. State v. Keller, 98 Wash.App. 381, 383-384, 990 P.2d 423 (1999). The amendment clarifies that any partial mitigation of park impacts is to be addressed only under Section .140.
¶ 34 In light of Section .140 and the "partial mitigation" amendment, the hearing examiner's interpretation of the phrase "have been mitigated" is more harmonious than the interpretation advocated by Belleau Woods. Still, the phrase is not free of ambiguity because it reasonably encompasses the possibility of either partial or full reduction of the *13 park impacts of the development. In this situation, we may look to further indicators of legislative intent. See Dep't of Ecology, 146 Wash.2d at 12, 43 P.3d 4.
¶ 35 An important indicator of legislative intent is the way the Parks Department applied the impact fee ordinance to Belleau Woods. The director of the Parks Department testified before the hearing examiner in support of the interpretation adopted by the hearing examiner. Where an agency is charged with the administration and enforcement of a statute, the agency's interpretation of an ambiguous statute is accorded great weight in determining legislative intent. Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 628, 869 P.2d 1034 (1994).
¶ 36 We conclude that the hearing examiner interpreted the exemption for past mitigation in the manner most harmonious with the ordinance as a whole. To the extent that the phrase "have been mitigated" is ambiguous, the interpretation of the Parks Department is dispositive. We conclude the city intended that a developer is entitled to a full exemption only if the previous contribution of land or money was equivalent to the park impact fees assessed under BMC 19.04.
¶ 37 The superior court erred in holding Belleau Woods exempt from park impact fees under BMC 19.04. We reverse and remand for reinstatement of the decision of the hearing examiner.
WE CONCUR: LAU and APPELWICK, JJ.
NOTES
[1] A local government may enter into a development agreement with a person having ownership or control of real property within its jurisdiction. A city may enter into a development agreement for real property outside its boundaries as part of a proposed annexation or a service agreement. A development agreement must set forth the development standards and other provisions that shall apply to and govern and vest the development, use, and mitigation of the development of the real property for the duration specified in the agreement. A development agreement shall be consistent with applicable development regulations adopted by a local government planning under chapter 36.70A RCW.

RCW 36.70B.170(1).