[No. 39417-1-II.   Division Two.   December 21, 2010.]

TESORO REFINING AND MARKETING COMPANY, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*George C. Mastrodonato* and *Michael B. King* (of *Carney Badley Spellman PS*), for appellant.

*Robert M. McKenna, Attorney General*, and *Donald F. Cofer, Senior Counsel*, for respondent.

¶1 QUINN-BRINTNALL, J. — Tesoro Refining and Marketing Co. appeals a trial court's decision granting summary judgment to the Department of Revenue (DOR) denying Tesoro a tax refund. Tesoro argues that the statute governing the relevant deduction, former RCW 82.04.433 (1985), unambiguously entitles a manufacturer that also sells certain products to take a deduction against its business and occupation (B&O) tax liability. Tesoro also argues that the retroactive application of the 2009 amendment of former RCW 82.04.433 would violate due process. DOR argues that because the statute is limited to amounts received from the activity of selling qualified products, the deduction could not have been intended to be applied against manufacturing B&O taxes. Thus, DOR asserts that retroactive enforcement of the 2009 amendment would not violate due process because the "clarifying amendment" did not change the meaning of the statute. Because the plain language of former RCW 82.04.433 entitles a refinery to a deduction of amounts derived from sales of qualifying products against its manufacturing B&O taxes and the 2009 amendment may not apply retroactively 24 years, we reverse the trial court's order granting DOR summary judgment and remand for further proceedings consistent with this opinion.

108

## FACTS

¶2 Tesoro is a Delaware corporation which owns and operates an oil refinery in Anacortes, Washington. One of the refinery's products is marine bunker fuel, a residual fuel oil that remains after gasoline and distillate fuel are extracted from crude oil. Bunker fuel is primarily sold to ocean-going ships and vessels. Tesoro manufactures and sells bunker fuel in its Anacortes refinery and also sells bunker fuel directly to vessels in Port Angeles, Washington.

¶3 During the time period at issue, December 1, 1999 to December 31, 2007, Tesoro made more than 9,700 sales of bunker fuel to vessels engaged in foreign commerce for consumption outside the territorial waters of the United States. Tesoro reported its sales of bunker fuel on both the "Manufacturing" line and "Wholesaling and Retailing" line of its monthly tax returns as required under Washington State law. Then, pursuant to schedule C of the return, Tesoro took a multiple activities tax credit, former RCW 82.04.440 (2007), for B&O taxes that were otherwise payable.[1]

¶4 Former RCW 82.04.433(1) permitted a deduction from "tax amounts derived from sales of [a qualifying] fuel."

---

[1] Under the previous tax exemption scheme, a company that both manufactured and sold products paid wholesale or retailing B&O tax but was exempted entirely from manufacturing B&O tax. *See generally Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987) (discussing the history of the Washington B&O tax and the multitude of constitutional challenges against it). In 1987, the Supreme Court of the United States held that the Washington State multiple activities tax exemption scheme was unconstitutional as a violation of the commerce clause. *Tyler Pipe*, 483 U.S. at 248.

In response to the *Tyler Pipe* decision, the Washington Legislature designed the multiple activity tax credit (MATC) scheme, which, among other things, flipped the reporting requirements for B&O tax credits or exemptions. Thus, under MATC, while Tesoro is technically liable for both manufacturing and selling B&O taxes, the manufacturing B&O taxes are credited against the selling B&O taxes in computing total B&O tax liability. Former RCW 82.04.440(2).

Bunker fuel is a qualifying fuel. WAC 458-20-175 (Rule 175)[2] provides that under (former and current) RCW 82.04.433, in order to take the deduction, a seller must obtain a certificate signed by the buyer for each qualifying sale of fuel. Tesoro collected the requisite certificates for each sale that it contends it was entitled to deduct under former RCW 82.04.433.

¶5 Pursuant to former RCW 82.04.433, Tesoro initially requested a partial refund of $2,550,867 in B&O taxes paid on bunker fuel manufactured and sold during the period of December 1, 1999 through April 30, 2004.[3] DOR's Audit Division denied Tesoro's refund request. DOR's Appeals Division also denied Tesoro's refund request on the basis that the tax deduction did not apply to manufacturer B&O tax but only to wholesaler and retailer B&O tax.[4] Tesoro continued to pay an additional $4,128,997 in B&O taxes between May 1, 2004 and December 31, 2007 on sales of

---

[2] Rule 175 states,

[O]n July 1, 1985, a statutory business and occupation tax deduction became effective for sales of fuel for consumption outside the territorial waters of the United States by vessels used primarily in foreign commerce. In order to qualify for this deduction sellers must take a certificate signed by the buyer or the buyer's agent. . . . Sellers must exercise good faith in accepting such certificates and are required to add their own signed statement to the certificate to the effect that to the best of their knowledge the information contained in the certificate is correct.

. . . .

When a completed certification . . . is taken in good faith by the seller, the sale is exempt of business and occupation tax, whether made at wholesale or retail, and even though the fuel is delivered to the buyer in this state.

[3] Former RCW 82.32.060(1) (2004), governing credits and refunds of excess taxes paid, provides that "no refund or credit shall be made for taxes . . . paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records is completed." We assume that Tesoro timely filed its refund application.

[4] Tesoro and other refiners that both manufacture and sell bunker fuel have higher manufacturing B&O tax liability than selling B&O tax liability. Under MATC, the refineries' manufacturing B&O tax liability may be credited only against the total amount of wholesaling or retailing B&O tax liability. Former RCW 82.04.440(2). Thus, the taxpayers remain liable for and pay any excess manufacturing B&O taxes. By requesting a refund, Tesoro seeks the former RCW 82.04.433 deduction for amounts derived from *sales* of fuel against the *manufacturing* B&O taxes it paid.

bunker fuel for use in vessels engaged in foreign commerce outside the territorial waters of the United States.[5]

¶6 On February 11, 2008, Tesoro appealed DOR's Appeals Division determination in Thurston County Superior Court. The day before trial was set to begin, the legislature amended former RCW 82.04.433.[6] LAWS OF 2009, ch. 494, §§ 2-6. The amendment added language to the statute clearly limiting its applicability to wholesalers and retailers of qualifying fuel. RCW 82.04.433. The amendment also added language declaring, "This act applies both prospectively and retroactively." LAWS OF 2009, ch. 494, § 4. Nevertheless, Tesoro moved for partial summary judgment, seeking an order declaring that Tesoro, as a manufacturer and seller of bunker fuel, qualified for the former RCW 82.04.433 deduction and was entitled to a refund of B&O taxes paid. DOR filed a cross motion for summary judgment.

¶7 On May 15, 2009, the trial court entered an order granting summary judgment to DOR, finding that former RCW 82.04.433 extended only to retailing and wholesaling B&O taxes, not to manufacturing B&O taxes, and that Tesoro was not entitled to a refund. Tesoro timely appeals.

## DISCUSSION

■ ¶8 We review summary judgments de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009) (citing *Troxell v. Rainier Pub. Sch. Dist. No. 307*,

---

[5] Thus, Tesoro contends it is entitled to a total refund amount of approximately $6,679,864.

[6] RCW 82.04.433, as amended, states,

(1) In computing tax there may be deducted from the measure of tax imposed under RCW 82.04.250 [retailers] and 82.04.270 [wholesalers] amounts derived from sales of fuel for consumption outside the territorial waters of the United States, by vessels used primarily in foreign commerce.

(2) The deduction in subsection (1) of this section does not apply with respect to the tax imposed under RCW 82.04.240 [manufacturers], whether the value of the fuel under that tax is measured by the gross proceeds derived from the sale thereof or otherwise under RCW 82.04.450 [retailers].

154 Wn.2d 345, 350, 111 P.3d 1173 (2005)). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A party against whom a claim is asserted may move for a summary judgment in his favor as to all or any part thereof. CR 56(b). Whether former RCW 82.04.433 applies to manufacturing B&O taxes is a question of law we review de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Financing*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000) (statutory interpretation is a question of law, which an appellate court reviews de novo).

¶9 The fact that Tesoro engages in the activity of selling is uncontested. DOR acknowledges that Tesoro sells bunker fuel to vessels engaged in foreign commerce outside the territorial waters of the United States. The relevant issue, therefore, is whether the plain language of former RCW 82.04.433 limits the applicability of the deduction to only sales, whether wholesale or retail, B&O taxes. Because the plain language of the statute does not restrict the deduction to exclude manufacturers and manufacturing B&O taxes, we hold that former RCW 82.04.433 unambiguously allowed a company that both manufactured and sold bunker fuel to take a tax deduction for amounts derived from those sales.

UNAMBIGUOUS LANGUAGE OF FORMER RCW 82.04.433

¶10

In order to ascertain the meaning of RCW [82.04.433], we look first to its language. If the language is not ambiguous, we give effect to its plain meaning. "If a statute is clear on its face, its meaning is to be derived from the language of the statute alone." If a statute is ambiguous, we employ tools of statutory construction to ascertain its meaning. A statute is ambiguous if it is "susceptible to two or more reasonable interpretations, but a statute is not ambiguous merely because different interpretations are conceivable." . . . Thus, when a statute is not

ambiguous, only a plain language analysis of a statute is appropriate.

*Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (citations omitted) (internal quotation marks omitted) (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002); *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). In ascertaining the "plain meaning" of a statute, we look not only to the ordinary meaning of the language at issue but also to the general context of the statute, related provisions, and the statutory scheme as a whole. *Belleau Woods II, LLC v. City of Bellingham*, 150 Wn. App. 228, 240, 208 P.3d 5, *review denied*, 167 Wn.2d 1014 (2009). And, where statutory language is plain and unambiguous, we will "glean the legislative intent from the words of the statute itself, regardless of contrary interpretation by an administrative agency." *Agrilink*, 153 Wn.2d at 396 (citing *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995)).

¶11 Former RCW 82.04.433(1) states,

> In computing tax there may be deducted from the measure of tax amounts derived from sales of fuel for consumption outside the territorial waters of the United States, by vessels used primarily in foreign commerce.

¶12 First, Tesoro argues that the language "[i]n computing tax there may be deducted from the measure of tax" refers to all B&O taxes. Br. of Appellant at 13. DOR argues that the phrase "[i]n computing tax" could not possibly apply to *any* B&O tax because it is language simply indicating that the legislature intends to create a tax deduction of some kind. Specifically, DOR argues that by creating a deduction for the "activity of *selling* bunker fuel," there is no "hint" that the legislature intended the deduction be taken when computing manufacturing B&O tax liability.[7] Br. of Resp't at 9.

---

[7] DOR urges this court to consider the additional "intent" language of the 2009 amendment in construing legislative intent, but we do not consider legislative

¶13 Chapter 82.04 RCW lists the definitions, measures of tax, tax percentages, exemptions, deductions, and credits with respect to B&O taxes. RCW 82.04.4281 through .43391 list B&O tax deductions, nearly all of which begin with the language "[i]n computing tax." This language can be contrasted with the language found in nearly all B&O tax exemption statutes—"This chapter does not apply to"—and tax credit statutes—"In computing tax imposed under this chapter." RCW 82.04.310-.427 (exemptions), .434-.4495 (credits). Because the legislature specifically limited the B&O tax exemptions and credits, but not the deductions, to chapter 82.04 RCW, we hold that the "[i]n computing tax" language of former RCW 82.04.433 unambiguously refers to, at the very least, all B&O taxes. *See Agrilink*, 153 Wn.2d at 397 (when the legislature uses certain language in one instance, and different language in another, there is a difference in legislative intent).

¶14 But DOR urges this court to limit the deduction in former RCW 82.04.433 to wholesaling and retailing taxes. In support of its argument, DOR points to department rules and regulations that evince intent to limit the deduction to B&O taxes on the activity of selling. Because the statutory language is clear, a department regulation cannot alter the plain language to resolve an ambiguity that does not exist on the face of the statute. We do not " 'add language to an unambiguous statute even if [we] believe[ ] the Legislature intended something else but did not adequately express it.' " *Cerrillo*, 158 Wn.2d at 201 (quoting *Kilian*, 147 Wn.2d at 20). DOR's argument that this court should add the words "wholesale and retail B&O tax" into former RCW 82.04.433 goes "too far." *Homestreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 454, 210 P.3d 297 (2009) (DOR went "too far" when it argued that the court should determine that a statute distinguished between different types of interest revenue depending on the pur-

intent because we do not hold the plain language of former RCW 82.04.433 is ambiguous. LAWS OF 2009, ch. 494, § 1; *see Cerrillo*, 158 Wn.2d at 201 (quoting *Agrilink*, 153 Wn.2d at 396).

pose of the interest when the statute required only "interest" to be received).

¶15 Moreover, DOR's contention conflicts with its own previous determinations that it could not deny a manufacturer the deduction by artificially limiting the statute's applicability to only wholesalers and retailers. For example, in 1988, DOR made a determination that the former RCW 82.04.433 deduction may properly be taken against retailing, wholesaling, *and* manufacturing B&O taxes. Clerk's Papers (CP) at 294-95. Then, in 1993, DOR made a determination that when a taxpayer derived amounts from qualified sales of bunker fuel, DOR could not limit the former RCW 82.04.433 deduction to wholesalers or retailers and exclude manufacturers. CP at 221-25. The fact that DOR appears to have allowed refiners (manufacturers) who sold qualifying fuel to take the deduction is further evidenced by its recognition that the 2009 amendment would cure "a potential *ongoing* estimated revenue loss of $4.75 million in the biennium ending in Fiscal Year 2011." Agency Fiscal Note to S.B. 6096, at 2, 61st Leg., Reg. Sess. (Wash. 2009) (prepared by DOR) (emphasis added).

¶16 Second, DOR asserts that because RCW 82.04.240, imposing manufacturer B&O taxes, provides the "measure of the tax" to be "the value of the products . . . so manufactured," the legislature clearly intended the tax to be imposed against only a company's manufacturing "business activity." We agree. One method prescribed to calculate "the value of products" is by determination of "the gross proceeds derived from the sale thereof whether such sale is at wholesale or at retail." RCW 82.04.450(1). DOR appears to claim that the phrase "amount derived from sales" of bunker fuel under former RCW 82.04.433 cannot be used interchangeably with the "measure of tax" imposed on manufacturers in Washington State or "gross proceeds derived from [sales]" because the former RCW 82.04.433 deduction was intended to relieve taxpayers from only B&O taxes on the *activity* of selling bunker fuel. Br. of Resp't at 10-11; *see* RCW 82.04.240, .450.

¶17 To the extent possible, we give effect to all statutes or provisions governing the same subject matter. *In re Estate of Kerr*, 134 Wn.2d 328, 335-37, 949 P.2d 810 (1998). It is the court's duty to reconcile apparently conflicting statutes and to give effect to each of them, if this can be achieved without distortion of the language used. *Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 391-92, 645 P.2d 697 (1982).

¶18 In the instant case, there is no conflict among the plain texts of former RCW 82.04.433, RCW 82.04.240, and RCW 82.04.450. RCW 82.04.240 unambiguously imposes B&O tax for manufacturers of products. RCW 82.04.450 prescribes methods for determining the value of manufactured products for purposes of calculating manufacturer B&O tax liability. Former RCW 82.04.433 then provides a deduction for the "amounts derived from sales" of qualifying products from the "measure of tax" without specifying *which* measure of tax it may be applied against. The term "derived from" is not defined in the B&O tax statutes, but our Supreme Court recently defined the term as " 'to take or receive esp. from a source.' " *Homestreet*, 166 Wn.2d at 453 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 608 (2002)). Here, Tesoro has proved by Rule 175 certificates and, it is undisputed, the amount at issue was "received" from sales to vessels for use primarily in foreign commerce as required under former RCW 82.04.433. That a different methodology is employed to calculate Tesoro's initial manufacturing B&O tax liability does not affect this analysis.

¶19 Accordingly, we hold that the language of former RCW 82.04.433 is unambiguous. The plain language of the statute shows (1) a deduction was intended; (2) the deduction applies, at the very least, against all chapter 82.04 RCW B&O taxes; (3) the deduction was for an amount "derived from" or taken as a result of qualifying sales to vessels used primarily in foreign commerce; and (4) in order to take the deduction, a seller must have complied with the certificate requirements in Rule 175.

TESORO QUALIFIES FOR THE DEDUCTION UNDER FORMER RCW 82.04.433

¶20 Tesoro has the burden of proving its entitlement to the former RCW 82.04.433 B&O tax deduction. *Browning v. Dep't of Revenue*, 47 Wn. App. 55, 57, 733 P.2d 594 (1987) (citing *Rainier Bancorporation v. Dep't of Revenue*, 96 Wn.2d 669, 638 P.2d 575 (1982)). It is undisputed that Tesoro engaged in "sales of fuel for consumption outside the territorial waters of the United States, by vessels used primarily in foreign commerce" as required under former RCW 82.04.433(1). Tesoro paid approximately $6,679,864 in B&O taxes directly related to those sales and fully complied with the Rule 175 certificate requirements.

¶21 Accordingly, because Tesoro has successfully met its burden, we hold that it is entitled to a refund of B&O taxes paid that could have been deducted under former RCW 82.04.433.

RETROACTIVE APPLICABILITY OF RCW 82.04.433, AS AMENDED

¶22 For the first time on appeal, Tesoro argues that retroactive application of RCW 82.04.433 violates due process because the amendment impermissibly attempts to reach back 24 years. DOR contends that the 2009 amendment does not violate due process because the amendment, enacted to "clarify" the 1985 statute, made no change to the meaning of former RCW 82.04.433. We agree with Tesoro that the 24-year retroactivity clause violates due process.

¶23 Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The appellant must show actual prejudice in order to establish that the error is "manifest." *State v. Munguia*, 107 Wn. App. 328, 340, 26 P.3d 1017 (2001) (citing *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)), *review denied*, 145 Wn.2d 1023 (2002). Merely that a tax act is retroactive in operation is not of itself sufficient to justify a holding that the act is unconstitutional. *Japan Line, Ltd. v. McCaffree*, 88 Wn.2d

93, 96, 558 P.2d 211 (1977) (quoting *Bates v. McLeod*, 11 Wn.2d 648, 656, 120 P.2d 472 (1941)).

¶24 DOR relies on *United States v. Carlton*, 512 U.S. 26, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994), for the proposition that the due process clause does not impose *any* fixed limit on the retroactive reach of tax statutes. DOR's reliance on *Carlton*, however, is misguided. In *Carlton*, Congress amended a provision of a federal estate tax statute by limiting the availability of a deduction to specific stock ownership plans. 512 U.S. at 27. The deduction had been initially created in October 1986, and the amendment passed just over one year later in December 1987. *Carlton*, 512 U.S. at 27-29.

¶25 The *Carlton* Court stated that the due process standard to be applied to tax statutes with retroactive effect is the same as that generally applied to retroactive economic legislation:

"Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches."

512 U.S. at 30-31 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)). Applying this relatively minimal standard, the *Carlton* Court held that the 1987 amendment, enacted just 14 months after the 1986 deduction, was intended as a curative measure that could be "reasonably viewed as a [correction of a] mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss." 512 U.S. at 32. The Court highlighted that there was "no plausible contention that Congress acted with an improper motive, as by targeting [the taxpayer]." *Carlton*, 512 U.S. at 32. The *Carlton* Court further held that "Congress acted promptly and established only a modest period of retroactivity." 512 U.S. at 32. In doing so, the Supreme Court stated,

[I]n *United States* v. *Darusmont*, 449 U. S.[ 292, 296, 101 S. Ct. 549, 66 L. Ed. 2d 513 (1981), we noted] that Congress "almost without exception" has given general revenue statutes effective dates prior to the dates of actual enactment. This "customary congressional practice" generally has been *"confined to short and limited periods required by the practicalities of producing national legislation."*

512 U.S. at 32-33 (emphasis added) (quoting *Darusmont*, 449 U.S. at 296-97).

¶26  The facts of *Carlton* are readily distinguishable from the instant case. Here, the deduction statute at issue, former RCW 82.04.433, was enacted in 1985. The legislature has had ample opportunity since 1985 to restrict its applicability to only retail and wholesale B&O tax. DOR attempts to analogize the instant case with *Carlton* by framing the 2009 amendment as a "clarifying amendment." But the legislature may not apply a "clarification" retroactively for 24 years when it is in direct conflict with the reasonable expectations of qualifying taxpayers. *Carlton*, 512 U.S. at 29-30 (the two factors paramount in determining whether retroactive application of a tax violates due process are (1) whether the taxpayer had actual or constructive notice that the tax statute would be retroactively amended and (2) whether the taxpayer reasonably relied to his detriment on preamendment law); *Bates*, 11 Wn.2d at 656 (even when a tax has been imposed for the support of the general government, it has been held that if it is novel in character, a retroactive application may be subject to constitutional objection as being violative of due process).

¶27  And, unlike in *Carlton*, here the legislative history of the 2009 act shows the recent amendment was in direct response to Tesoro's refund request. The "intent" language of the amendment refers to recent "questions" regarding a manufacturer's ability to take the deduction. Laws of 2009, ch. 494, § 1. DOR's Fiscal Note to S.B. 6096 also refers to Tesoro's lawsuit:

A manufacturer of bunker fuel has brought a refund lawsuit against the Department, contending that the bunker fuel

deduction may be claimed against its manufacturing B&O tax liability for manufacturing the bunker fuel. The lawsuit is currently pending in Thurston County Superior Court.

. . . .

If the pending lawsuit is resolved in favor of [Tesoro], enactment of this bill will prevent a potential ongoing estimated revenue loss of $4.75 million in the biennium ending in Fiscal Year 2011, $5.7 million in the biennium ending in Fiscal Year 2103 [sic], and $5.8 million in the biennium ending in Fiscal Year 2015.

Agency Fiscal Note to S.B. 6096, at 2. The direct references to Tesoro's lawsuit and the fact that the 2009 act became effective the day before trial was set to begin evidences the type of improper taxpayer targeting identified by the *Carlton* Court. 512 U.S. at 32-33.

¶28 There is no colorable argument to suggest a legislative act creating a 24-year retroactive tax period is "prompt[ ]" or establishes a "modest period of retroactivity." *Carlton*, 512 U.S. at 32-33. We recognize that identifying and correcting significant fiscal losses is a legitimate legislative purpose. But we hold that it is not reasonable for the legislature to enact a retroactive amendment spanning 24 years in direct response to a taxpayer's refund lawsuit. *See State v. Pac. Tel. & Tel. Co.*, 9 Wn.2d 11, 17, 113 P.2d 542 (1941) (Washington Legislature's attempt to create a four-year tax retroactivity period exceeded "limited or permissible retroactivity" which extends " 'to prior but recent transactions' " (quoting *Welch v. Henry*, 223 Wis. 319, 326, 271 N.W. 68 (1937))). Here, DOR recognized that multiple activity taxpayers, like Tesoro, have been entitled to take the former RCW 82.04.433 deduction, resulting in "ongoing" revenue losses for the State. Agency Fiscal Note to S.B. 6096, at 2. Thus, under Washington law, because such an imposition of the B&O tax is "novel" against manufacturer-sellers of bunker fuel, RCW 82.04.433 cannot be applied retroactively. *Bates*, 11 Wn.2d at 656.

¶29 Tesoro has met its burden to show actual prejudice against it. *Munguia*, 107 Wn. App. at 340. Nothing in the plain language of former RCW 82.04.433 suggests a refinery

that both manufactures and sells bunker fuel is precluded from enjoying the benefit of the former RCW 82.04.433 deduction from its B&O taxes. Accordingly, we hold that the 24-year period is well beyond the limit of permissible retroactivity and retroactive enforcement of the amendment would violate due process. *Pac. Tel.*, 9 Wn.2d at 17.

PROSPECTIVE APPLICABILITY OF RCW 82.04.433, AS AMENDED

¶30 Also, for the first time on appeal, Tesoro argues that the 2009 amendment is invalid prospectively because the bill did not receive a two-thirds supermajority vote of both houses of the legislature required for passage of a bill to raise taxes. Former RCW 43.135.035 (2005). Generally, the unconstitutionality of a law is not ripe for review unless the person seeking review is harmed by the part of the law alleged to be unconstitutional. *State v. Ziegenfuss*, 118 Wn. App. 110, 113, 74 P.3d 1205 (2003), *review denied*, 151 Wn.2d 1016 (2004). Here, we have held that the 2009 amendment of RCW 82.04.433 applies only to tax obligations after its enactment. Tesoro challenges a denial of its refund claim for the period from December 1, 1999 to December 31, 2007. Thus, Tesoro was not harmed by the prospective application of the 2009 amendment during the refund period and the issue of whether the 2009 amendment is unconstitutional for failure to comply with former RCW 43.135.035 is not ripe for review.[8]

¶31 The order granting DOR summary judgment is reversed, and we remand for further proceedings consistent with this opinion.

WORSWICK, A.C.J., and SERKO, J. PRO TEM., concur.

Review granted at 171 Wn.2d 1016 (2011).

---

[8] During oral argument, DOR cited *Brown v. Owen*, 165 Wn.2d 706, 206 P.3d 310 (2009), regarding the constitutionality of a voter initiative requiring a legislative supermajority to raise taxes. We note that in *Brown*, our Supreme Court expressly declined to address the constitutionality of the supermajority requirement. 165 Wn.2d at 711. Because we hold the issue is not ripe for our review, we also decline to address this issue.