[No. 39366-2-II.   Division Two.   June 1, 2011.]

ARTHUR WEST, *Appellant*, v. WASHINGTON ASSOCIATION OF COUNTY OFFICIALS, *Respondent*.

[9] Because this issue is dispositive, we need not further address the other claims of error set forth in the LUPA petition.

122

124

*Arthur West*, pro se.

*Jeffrey S. Myers* (of *Law, Lyman, Daniel, Kamerrer & Bogdanovich PS*), for respondent.

¶1 QUINN-BRINTNALL, J. — Arthur West appeals the dismissal of his claim that the Washington Association of County Officials (WACO) violated the Open Public Meetings Act of 1971 (OPMA), ch. 42.30 RCW. West also appeals the imposition of CR 11 sanctions against him. We hold that WACO is subject to the OPMA. Accordingly, we reverse the dismissal of West's OPMA claim and remand. In addition, we affirm the CR 11 sanctions against West.

## FACTS

¶2 In November 2008, West filed a complaint in Thurston County Superior Court against WACO and the Washington State Association of Counties (WSAC) for violations of the Public Records Act (PRA), ch. 42.56 RCW, the OPMA, and RCW 36.47.070 and .040. West moved for summary judgment, arguing that *Telford v. Thurston County Board of Commissioners*, 95 Wn. App. 149, 974 P.2d 886, *review denied*, 138 Wn.2d 1015 (1999), held that WACO and WSAC

were subject to the public records portions of the PRA[1] and to the OPMA.

¶3 WACO filed a CR 12(b)(6) motion to dismiss, arguing that (1) West failed to allege any particular violation of the PRA, (2) there is no actionable claim to enforce the legislative merger request in RCW 36.47.070,[2] (3) West failed to allege any violation of the reimbursement provisions of RCW 36.47.040,[3] and (4) WACO is not a "public agency" under the OPMA. West responded to WACO's motion, arguing that (1) WACO and WSAC were collaterally estopped from arguing against his PRA and OPMA claims under *Telford* and (2) he had standing to bring the claims.

¶4 On March 27, 2009, the trial court granted WACO's motion to dismiss, finding that (1) there was no PRA request made prior to West's suit and a subsequent filing did not cure the fact that there was no violation giving rise to a cause of action, (2) there is no actionable claim for a violation of the legislature's merger request in RCW 36.47.070 against WACO, and (3) West's OPMA claim was unsupported by evidence overcoming the differences in the "public agency" definitions in the PRA and OPMA.[4] The

---

[1] In 2005, the legislature recodified and renamed the public disclosure act, former ch. 42.17 RCW (1973), as the PRA, ch. 42.56 RCW. Laws of 2005, ch. 274, § 103. For clarity, we address the statute as PRA, even in the *Telford* context.

[2] RCW 36.47.070 provides,

It is the desire of the legislature that the Washington State Association of County Officials, as set forth in chapter 36.47 RCW and the Washington State Association of Counties, as set forth in RCW 36.32.350, shall merge into one association of elected county officers. Only one association shall carry out the duties imposed by RCW 36.32.335 through 36.32.360 and 36.47.020 through 36.47.060.

[3] RCW 36.47.040 provides, "Each county which designates the Washington state association of county officials as the agency through which the duties imposed by RCW 36.47.020 may be executed is authorized to reimburse the association from the county current expense fund for the cost of any such services rendered."

[4] The trial court declined to dismiss West's claims against WSAC, ruling that West had properly alleged violations against WSAC and that this court's holding in *Telford* regarding campaign finances under the PRA could not be the subject of issue preclusion on a matter involving the PRA for disclosure of public documents. Thus, only the dismissed OPMA claim against WACO and the subsequent CR 11 sanctions imposed on West are presented in this appeal. CR 54(b).

trial court then denied West's motion for summary judgment because it found that *Telford*, which addressed the campaign finance portions of the PRA only, did not stand for the proposition that either WACO or WSAC are subject to the OPMA.

¶5 On March 30, 2009, West filed a "Declaration re Continuing Fraud by WACO Counsel," alleging that counsel materially misrepresented WACO's creation to the trial court. Clerk's Papers (CP) at 20. WACO's counsel wrote a letter to West on April 3, requesting that he withdraw the declaration or face motions to strike and for sanctions. Receiving no response, WACO moved to strike West's declaration and for CR 11 sanctions on April 17. The trial court granted the motion on May 8, imposed $4,029 as CR 11 sanctions against West, and entered a written order and judgment containing findings pursuant to CR 54(b). The trial court simultaneously denied West's motions for reconsideration and to amend his complaint to allege that WACO violated the PRA.

¶6 West timely appeals the dismissal of his OPMA claim and the CR 11 sanctions.

## DISCUSSION

OPEN PUBLIC MEETINGS ACT—PUBLIC AGENCIES

¶7 West asserts that our holding in *Telford* that WACO is an "agency" for purposes of the campaign funding portions of the PRA precludes WACO from challenging whether it is subject to the OPMA. Alternatively, West argues that if *Telford* does not preclude WACO from challenging his OPMA claim,[5] we should apply the *Telford* test to hold that WACO is the functional equivalent of a "public agency"

---

[5] To prevail on his OPMA claim, West must demonstrate that (1) members of a governing body of WACO (2) held a meeting (3) where the governing body took action in violation of the OPMA, and (4) the members of the governing body had knowledge that the meeting violated the statute. *Eugster v. City of Spokane*, 128 Wn. App. 1, 7, 114 P.3d 1200 (2005) (citing *Eugster v. City of Spokane*, 110 Wn. App. 212, 222, 39 P.3d 380, *review denied*, 147 Wn.2d 1021 (2002)), *review denied*, 156 Wn.2d 1014 (2006); *Loeffelholz v. Citizens for Leaders with Ethics & Accountabil-

subject to the OPMA. For its part, WACO argues that the trial court properly dismissed the OPMA claim because the definition of "public agency" in the OPMA is narrower than in the PRA and unambiguously excludes WACO.

¶8 Both the trial court's summary judgment claim dismissal and the question of law regarding whether collateral estoppel bars an action are subject to de novo review in this court. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009) (citing *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005)); *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005). The de novo standard also applies to our review of a trial court's granting of a CR 12(b)(6) motion to dismiss. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 717, 189 P.3d 168 (2008) (citing *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994), *cert. denied*, 515 U.S. 1169 (1995)).

¶9 CR 12(b)(6) provides for dismissal of a complaint if it fails to state a claim on which relief can be granted. *Rodriguez*, 144 Wn.2d at 717 (citing *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 135 Wn.2d 618, 623, 957 P.2d 691 (1998)). Such dismissals are disfavored and are warranted only if the trial court concludes, beyond a reasonable doubt, that the plaintiff cannot prove any set of facts justifying recovery. *Rodriguez*, 144 Wn.2d at 717 (citing *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998), *cert. denied*, 525 U.S. 1171 (1999)). Under CR 12(b)(6), we presume all facts alleged in the plaintiff's complaint are true. *Rodriguez*, 144 Wn.2d at 717 (citing *Tenore*, 136 Wn.2d at 330). But we are not required to accept the complaint's legal conclusions as true. *Rodriguez*, 144 Wn.2d at 717-18 (citing *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987)).

¶10 As an initial matter, we hold that the trial court properly concluded that *Telford* did not preclude

WACO from challenging whether it is subject to the OPMA. The doctrine of collateral estoppel bars a second round of litigation of previously litigated issues that resulted in a final judgment. *Yakima County v. Yakima County Law Enforcement Officers Guild*, 157 Wn. App. 304, 331-32, 237 P.3d 316 (2010). The party seeking to bar litigation of an issue based on collateral estoppel must show that (1) the issue decided in the prior adjudication is identical with the one presented in the second, (2) the prior adjudication ended in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) application of the doctrine would not work an injustice. *Yakima County*, 157 Wn. App. at 331-32.

¶11 In *Telford*, we applied a four-factor balancing test to hold that WACO was an "agency" for purposes of the campaign finance portions of the PRA. 95 Wn. App. at 162. The four factors used to evaluate an entity's status under the PRA are (1) the entity's governmental function, (2) the entity's government funding, (3) government control over the entity, and (4) the entity's origin. *Telford*, 95 Wn. App. at 162-63. The *Telford* court did not discuss the OPMA. Here, the trial court, relying on 2002 Op. Att'y Gen. No. 2, found that because the parties in *Telford* had agreed to limit the issues to whether WACO was a public agency subject to the campaign finance portions of the PRA, the *Telford* court's holding was limited to that issue. We agree.[6]

¶12 West's assertion that the doctrine of collateral estoppel applies to preclude litigation on the issue of whether WACO is required to hold open public meetings under the OPMA because WACO has had the opportunity to litigate on the issue of whether it was subject to the campaign finance portions of the PRA fails. The trial court did not err

---

[6] We note, however, that the *Telford* test is fact based—dependent on the governmental function, funding, and control of the entity as a whole—not activity based. Thus, as a practical matter, reengaging in a *Telford* analysis of a different issue or activity for the same entity under the same statute will not likely result in a change of the entity's status as an "agency" regardless of the activity challenged.

when it denied West's motion for summary judgment and dismissed his OPMA claim based on West's collateral estoppel argument.

¶13 Next, we consider whether the *Telford* test is appropriate to evaluate WACO's status under the OPMA. WACO argues that because the OPMA does not include the PRA's catchall "other local public agency" language in its definition of "public agency," the OPMA unambiguously excludes associations like WACO. *See Telford*, 95 Wn. App. at 157-58 (holding that the "other local public agenc[ies]" language renders the PRA definition ambiguous). West argues that because the legislature enacted both the OPMA and PRA with the same intent, the *Telford* test is appropriate for an entity's evaluation under both Acts. *See Livingston v. Cedeno*, 164 Wn.2d 46, 52, 186 P.3d 1055 (2008); *Telford*, 95 Wn. App. at 159-60; *see also* RCW 42.30.010 ("The people insist on remaining informed so that they may retain control over the instruments they have created.").

¶14 In order to ascertain the meaning of the OPMA, we look first to its language. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). If the language is not ambiguous, we give effect to its plain meaning. *Cerrillo*, 158 Wn.2d at 201. As part of the determination of whether a plain meaning can be ascertained, it is appropriate to look at the statute's language in the context of the statutory scheme as a whole. *Belleau Woods II, LLC v. City of Bellingham*, 150 Wn. App. 228, 240, 208 P.3d 5, *review denied*, 167 Wn.2d 1014 (2009). We derive a statute's "plain meaning" from all that the legislative body has said in the statute and related statutes which disclose legislative intent about the provision in question. *Belleau Woods II*, 150 Wn. App. at 240 (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002)). But if a statute is ambiguous, we employ tools of statutory construction to ascertain its meaning. *Cerrillo*, 158 Wn.2d at 201. A statute is ambiguous if it is " 'susceptible to two or more reasonable interpretations, but a statute is not ambiguous merely because different interpretations are conceivable.' "

*Cerrillo*, 158 Wn.2d at 201 (internal quotation marks omitted) (quoting *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)).

¶15 The legislature enacted the OPMA as part of a nationwide effort to make government affairs more accessible and transparent. LAWS OF 1971, 1st Ex. Sess., ch. 250. The OPMA declares that the governing bodies of "all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies" are to take their actions and conduct their deliberations openly. RCW 42.30.010, .030. The OPMA's purpose is to permit the public to observe the steps employed to reach a governmental decision. *Eugster v. City of Spokane*, 128 Wn. App. 1, 7, 114 P.3d 1200 (2005) (citing *Cathcart v. Andersen*, 85 Wn.2d 102, 107, 530 P.2d 313 (1975)), *review denied*, 156 Wn.2d 1014 (2006). The intended result is to ensure government accountability to the public by demonstrating that publicly funded agencies are functioning as intended. And the OPMA contains the same strongly-worded declaration of public policy as the PRA:

> The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

RCW 42.30.010; RCW 42.56.030.

¶16 RCW 42.30.020(1)(a) provides that "public agency" means "[a]ny state board, commission, committee, department, educational institution, or other state agency which is created by or pursuant to statute, other than courts and the legislature." WACO is not a state board, commission, committee, department, or educational institution. Thus, to fit the statutory definition, WACO must qualify as an "other state agency which is created by or pursuant to statute." RCW 42.30.020(1)(a); *see Telford*, 95 Wn. App. at 158. This phrase is arguably ambiguous because, unlike the PRA, the

OPMA does not expressly define "state agency." *Compare* RCW 42.30.020(1)(a), *with* RCW 42.56.010(1). Nevertheless, because we construe the OPMA liberally to reach its intended purpose, we hold that for purposes of the OPMA, a "state agency" may be an association or organization created by or pursuant to statute which serves a statewide public function. RCW 42.30.910. An entity is created "pursuant to" a statute if it is created "in conformity with or in the course of carrying out [a statute], implying that what is done is in accordance with an instruction or direction." *Cathcart*, 85 Wn.2d at 104 (citing *Knowles v. Holly*, 82 Wn.2d 694, 702, 513 P.2d 18 (1973)). Accordingly, RCW 42.30.020(1)(a) requires that an enabling statute exist prior to or be enacted simultaneously with the creation of an entity carrying out a statewide public function.

¶17 The legislature formally created WACO in 1959. Laws of 1959, ch. 130, § 1 ("The necessity and the desirability of coordinating the administrative programs of all of the counties in this state is recognized by this act."); *see* RCW 36.47.010. Once recognized under the Washington law, counties were "empowered" to designate WACO as a "coordinating agency through which the duties imposed by [RCW 36.47.020] may be performed, harmonized, or correlated." Laws of 1959, ch. 130, § 3; *see* RCW 36.47.030. RCW 36.47.020 states broadly that "[i]t shall be the duty of the assessor, auditor, clerk, coroner, sheriff, superintendent of schools, treasurer, and prosecuting attorney of each county . . . to take such action as they jointly deem necessary to effect the coordination of the administrative programs of each county." *See also* Laws of 1959, ch. 130, § 2. Once a county designates WACO as its coordinating agency, WACO is entitled to a "reimbursement" from the county's expense fund. Laws of 1959, ch. 130, § 4; *see* RCW 36.47.040.

¶18 WACO's own actions caused it to be created "pursuant to" statute as required under the OPMA. WACO actively sought and applied multiple times for statutory recognition in the RCW. *See* Laws of 1959, ch. 130, § 3. It

pursued legislative authorization to receive public funds from counties and established itself as a statewide "coordinating agency" of county officials performing their public duties. *Telford*, 95 Wn. App. at 163 (WACO's function is the "statewide coordination of county administrative programs, declared by the Legislature to be a public purpose."). The fact that WACO initially conducted itself as a purely professional association among the state's county officials does not abrogate its decision to become a recognized public agency in 1959. Accordingly, we need not decide whether the *Telford* functional equivalent test is appropriate in this case to determine whether WACO is a public agency subject to the OPMA because WACO satisfies the statutory definition of "public agency" outright. *Telford* informs but does not control our decision here.

¶19 WACO's alternative argument that it cannot be a government body subject to the OPMA because it lacks decision-making authority also fails. First, there is no rule-making authority requirement for a public agency to be subject to the OPMA. Under RCW 42.30.020,[7] a governing body subject to the OPMA may be a policy-making body and "WACO policy is determined by an 18-member Board of Trustees made up of county officials from throughout the state" who "meet four to five times a year."[8] CP at 21. Second, even if there were such a decision-making authority requirement, we are unconvinced WACO would not

---

[7] RCW 42.30.020(2) provides,

"Governing body" means the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment.

[8] A "meeting" subject to the OPMA is any meeting in which a governing body takes an "action." RCW 42.30.020(4). An "action" means "the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." RCW 42.30.020(3). A "final action" means "a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance." RCW 42.30.020(3).

qualify. In addition to its enabling legislation,[9] at least 10 other statutes address WACO and expressly impose "public" duties on the association beyond those RCW 36.47.020 imposes on WACO's members.[10]

¶20 When public dollars support activities by taxpayer-supported entities to which the legislature has assigned specific statutory duties, performance of these duties must be verifiable by members of the public. We acknowledge that not all WACO activities involve legislative assignments. Although it advises the legislature on various matters, WACO itself does not have a direct rule-making or regulatory function. *Cf.* RCW 34.05.010(16), (18). We are also aware of WACO's express authorization to lobby the legislature on behalf of counties in a wide range of matters. And we emphasize that we do not intend our decision here to chill WACO's strategic lobbying discussions or other advisory activities.[11] Nevertheless, we hold that because elected public officials perform WACO activities financed

---

[9] RCW 36.47.010-.060.

[10] WACO, as a public coordinating agency, must (1) submit two nominees each for the coroner and medical examiner positions of the Washington State Forensic Investigations Council, (2) convene a committee to coordinate the use of the latest technology to improve the administration of missing person information, (3) work with volunteer experts to improve training in the area of sudden infant death syndrome, (4) determine a funding formula for allocation of moneys to counties for purposes of collecting legal financial obligations from former inmates who have earned early release from incarceration, and (5) file with the secretary of state a description of the standard uniforms for sheriffs and deputies. RCW 2.56.190; RCW 36.23.110; RCW 36.28.170; RCW 36.28A.100; RCW 43.103.040, .100. In addition, the legislature requires other public agencies to consult with WACO prior to (1) establishing guidelines related to the statewide first responder building mapping information system; (2) establishing a county preliminary budget for the ensuing fiscal year; and (3) drafting environmental and growth management model ordinances for use by counties, cities, and towns. RCW 36.28A.070; RCW 36.40.040; RCW 43.21C.130. And the legislature permits the Department of Revenue to contract with associations such as WACO to carry out its duty to conduct annual revaluations of taxable real property in each county. RCW 84.41.030.

[11] RCW 42.30.110 permits public agencies subject to the OPMA to hold executive sessions, in limited circumstances, which are not open to the public. For example, WACO may convene executive sessions to discuss matters of national security, to consider the minimum price at which real estate will be offered for sale or lease, to evaluate the qualifications of an applicant for public employment, or to evaluate the qualifications of a candidate for appointment to elective office. RCW 42.30.110(1)(a), (c), (g), (h).

by public money with an express legislative mandate to act as a coordinating agency for the activities of Washington's 39 counties, such activities are subject to the OPMA. Accordingly, we reverse the dismissal of West's OPMA claim and remand for further proceedings.

CR 11 SANCTIONS

¶21 West challenges the trial court's imposition of $4,029 in CR 11 sanctions. We review a trial court's imposition of CR 11 sanctions for an abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

¶22 CR 11 deals with two types of filings: (1) baseless filings and (2) filings made for an improper purpose. *MacDonald v. Korum Ford*, 80 Wn. App. 877, 883, 912 P.2d 1052 (1996). A filing is "baseless" when it is " '(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.' " *MacDonald*, 80 Wn. App. at 883-84 (quoting *Hicks v. Edwards*, 75 Wn. App. 156, 163, 876 P.2d 953 (1994), *review denied*, 125 Wn.2d 1015 (1995)). To impose sanctions for a baseless filing, the trial court must find not only that the claim was without a factual or legal basis, but also that the attorney who signed the filing did not conduct a reasonable inquiry into the factual and legal basis of the claim. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).

¶23 On March 30, 2009, West filed a Declaration re Continuing Fraud by WACO Counsel, alleging that WACO counsel made material misrepresentations regarding WACO's creation. CP at 20. West did not point to any specific instances of misrepresentation; rather, he vaguely alleged that WACO's web site contained a statement contradicting WACO's counsel's allegedly fraudulent representations. WACO's web site states,

By January of 1955, legislation was introduced to add the Washington State Association of Elected County Officials in statute. The bill did not pass. Determined county officials continued their efforts for four more years and ultimately won passage of the legislation in 1959.

WACO commenced operation on March 1, 1960, with offices in Olympia.

CP at 22. WACO's motion to dismiss stated,

> WACO was created in the 1950s and has been a private, nonprofit corporation since 1961. See *Telford* . . . , 95 Wn. App. at 154-55. It is not a state agency, but a private association of local officials who organized in 1953 . . . "to promote more uniform procedure in respective county offices in order to better serve the public." *Id.*

CP at 62. The trial court found West's declaration alleging that WACO's counsel committed fraud baseless because it was not well grounded in existing law or fact. We agree. Nothing in WACO's counsel's description of WACO's creation contradicts the statement on WACO's web site. West has made no showing of reasonable inquiry to verify or specify any instances of the alleged contradiction. Accordingly, we affirm the trial court's imposition of CR 11 sanctions.

JUDICIAL BIAS

¶24 West alleges that the trial court was biased and that prejudice is shown by the imposition of the CR 11 sanctions against him. A trial court is presumed to perform its functions regularly and properly without bias or prejudice. *In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (citing *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000)), *review denied*, 167 Wn.2d 1002 (2009). We review a trial court's denial of a motion that it recuse for an abuse of discretion. *Meredith*, 148 Wn. App. at 903 (citing *Wolfkill*, 103 Wn. App. at 840). Due process, the appearance of fairness doctrine, and former Canon 3(D)(1) of the Code of Judicial Conduct

(2002)[12] require that a judge disqualify him- or herself from hearing a case if that judge is biased against a party or if his or her impartiality may be reasonably questioned. *Meredith*, 148 Wn. App. at 903 (citing *Wolfkill*, 103 Wn. App. at 841). The test for determining whether a judge's impartiality might reasonably be questioned is an objective one that assumes the reasonable person knows and understands all the relevant facts. *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied*, 490 U.S. 1102 (1989)). The party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias. *State v. Dominguez*, 81 Wn. App. 325, 328-29, 914 P.2d 141 (1996).

¶25  To the extent West argues that the imposition of CR 11 sanctions is evidence of trial court prejudice, his argument fails. The trial court explained at length during the April 24, 2009 hearing that West was given an opportunity to withdraw his baseless accusations of fraud against his opposing counsel.[13] The imposition of CR 11 sanctions evidences only West's failure to comply with court rules, not the trial court's bias.[14] Accordingly, we hold that the trial court did not abuse its discretion when it declined to recuse.

ATTORNEY FEES ON APPEAL

¶26 West does not request attorney fees on appeal. WACO requests reasonable attorney fees under RAP 14.2 and 18.1(a) and sanctions under RAP 18.9. Because West prevails on his appeal on the OPMA issue but WACO

---

[12] Rule 2.11(A) is the correlating section of the current Code of Judicial Conduct, effective January 1, 2011.

[13] Although not an attorney, West was familiar with CR 11 and its consequences from his previous experience as a litigator. *Batten v. Abrams*, 28 Wn. App. 737, 739 n.1, 626 P.2d 984, *review denied*, 95 Wn.2d 1033 (1981). Regardless, a pro se litigant is held to the same standard as an attorney.

[14] West fails to cite to any portion of the record to support his bald assertion that the trial court tolerated and encouraged WACO's counsel's comparison of West to notorious public figures of ill repute. We do not address this portion of West's argument. RAP 10.3(a)(6).

prevails on the CR 11 sanction issue, we decline to award costs pursuant to RAP 14.2. We likewise decline to award WACO attorney fees pursuant to RAP 18.1. Last, RAP 18.9(a) permits this court to impose sanctions upon a party who files a frivolous appeal. No sanctions are warranted because West's appeal on the OPMA issue is not frivolous.

¶27 Accordingly, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

WORSWICK, A.C.J., and VAN DEREN, J., concur.

Reconsideration denied July 18, 2011.