# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THOMAS BRETT HAGGERTY,  )
                        )   No. 70827-9-I
        Appellant,  )
                        )   DIVISION ONE
   v.  )
                        )
                        )
SAIYIN PHASAVATH  )   UNPUBLISHED OPINION
                        )
       Respondent.  )   FILED: July 21, 2014

DWYER, J.—In this fourth appeal arising from virtually continuous litigation between Bret Haggerty and his ex-wife, Saiyin Phasavath, Bret contends the superior court abused its discretion in denying his motion to revise an order dismissing his petition for a domestic violence protection order. Because there was no abuse of discretion, and because Bret's other arguments lack merit, we affirm.

## FACTS

Bret and Saiyin divorced in 2001 and have two children, TJ and Sam. The parties have been engaged in contentious litigation, primarily involving allegations of domestic violence, since their divorce.

In February 2005, Saiyin obtained an order of protection that restrained Bret from contacting their children except as provided in an existing parenting plan. The order rested in part on Bret's harassing telephone calls, unfounded referrals to Child Protective Services (CPS), and Saiyin's fear of imminent physical harm to her and the children. The superior court denied Bret's motion to revise the order and we affirmed.

We acknowledged that Bret denied making the calls but refused to disturb the commissioner's credibility determinations.[1]

In 2006, a court commissioner renewed the protection order, finding that Bret had not met his burden of showing that he had taken steps to change his behavior.

In July 2006, the parties entered an agreed parenting plan. Because of Bret's history of false reporting, the plan prohibited him from making any reports to CPS regarding Saiyin or the children. It also limited Bret's contact with the children to weekly thirty minute telephone conversations at a specified time.

In September 2008, Saiyin obtained a new order of protection that restricted Bret's contact with Saiyin and the children except as provided in the parenting plan. Saiyin alleged a history of domestic violence that included Bret punching her and throwing her across the room when she was pregnant, throwing large and small objects at her, forcing her to have nonconsensual sex, and harassing her with phone calls and calls to the police and CPS. In affirming, we held that the evidence supported the court's findings of past domestic violence and Saiyin's present fear of Bret. We also sustained the court's finding regarding Bret's ongoing triangulation of the children. We acknowledged that Bret denied Saiyin's allegations, but we again deferred to the trial court's credibility determinations.[2]

In August, 2011, police and CPS investigated reports involving Saiyin, TJ, and Samuel. These included an incident in which Saiyin allegedly scratched TJ's neck and arms. Police arrested Saiyin for fourth degree assault. According to Bret, Saiyin

---

[1] In re Marriage of Phasavath, noted at 132 Wn. App. 1033, 3 (2006).

[2] In re Marriage of Phasavath, noted at 151 Wn. App. 1029 (2009).

eventually pleaded guilty to a lesser charge. Bret also alleged that Saiyin's husband,

Chan Phasavath, assaulted Samuel around this time. Bret claimed that Chan wanted to

take Samuel to see Saiyin but Samuel resisted. Chan then "lifted Samuel up by . . . the

back of his neck and threatened to shove rolled up papers in his ass if he didn't cross

the street." Clerk's Papers (CP) at 435. According to Bret, Chan "was subsequently

arrested again for assault, and was convicted, and spent a couple of days in jail." Id.

In September, 2011, Saiyin obtained a temporary protection order against Bret.

The court appointed a guardian ad litem who conducted an investigation and issued a

report. The report stated that both parents had engaged in domestic violence at some

point. With respect to the allegations that Saiyin had strangled and scratched TJ, the

report noted that a DSHS caseworker was considering closing the case as unfounded

because the incident was largely emotional and verbal and "was more of a fight

between TJ and his mother than physical abuse of a child." CP 283. The report also

stated in part that Bret

> has not taken responsibility for his behavior and denies altogether
> having engaged in any forms of domestic violence. . . . The father
> has chosen not to follow the court ordered steps that could lead to
> restoration . . . of his time with the children. Unfortunately, it is the
> mother that the children blame for this, rather than their father's
> inability or unwillingness to take responsibility for his domestic
> violence." CP at 283.

Contrary to Bret's allegations on appeal, the guardian ad litem (GAL) report states that

the incident involving Chan allegedly picking up Samuel and threatening him with a

newspaper did not result in charges and that the Department of Social and Health

Services (DSHS) determined the incident was unfounded. The GAL concluded that he

could not "in good conscience recommend that the children should live with their father"

- 3 -

until Bret accepted responsibility for his domestic violence and completed the domestic violence program ordered by the court in 2010. CP at 281

DSHS subsequently concluded that all of Bret's recent allegations against Saiyin were unfounded except for the allegation that she scratched TJ. A DSHS medical expert concluded, however, that the marks on TJ's neck were "likely to have been caused by a shirt being pulled from the back," as opposed to scratching with fingers.

In February, 2012, police arrested Chan for allegedly spitting in TJ's face after TJ admittedly told him to "fuck off."

In the fall of 2012, Bret accused Saiyin of poisoning TJ and Samuel. In October, 2012, DSHS concluded that those accusations were unfounded.

In July 2013, Bret filed a petition for a protection order on behalf of TJ and Samuel. The petition alleged that in June, 2013, Chan threw Samuel out of Saiyin's house. Bret claimed that Chan grabbed Samuel and repeatedly threw him to the ground. The petition further alleged that Saiyin had been arrested for strangling TJ in August, 2011, and that her "history includes the strangling of her older son Koraphol that is document[ed] in past CPS reports."

Bret also expressed concern about Koraphol, alleging that he "has just recently been released from incarceration and . . . resides in Saiyin's house. . . . [H]e has a long history of theft and assault charges that have resulted in convictions and jail time." CP 436. Bret alleged that Chan had been convicted of assaulting Samuel, and that Saiyin had been convicted of assaulting Bret and making a false report in 2002/2003. The court granted a temporary protection order pending a hearing.

In a responsive declaration, Saiyin denied Bret's allegation of a domestic violence incident occurring in June, 2013. As to Bret's allegations that she poisoned TJ and Samuel in 2012, she noted that DSHS ultimately ruled that the 2012 allegations were unfounded. She also noted that DSHS found that two of three reports Bret made against her in 2011 were unfounded and that the one founded allegation — the scratching of TJ — only resulted in a recommendation of counseling. Saiyin recounted Bret's acts of domestic violence and failure to obtain court-ordered treatment. She also pointed to evidence that Bret had repeatedly engaged in triangulation of the children in an effort to turn them against her.

In a second declaration, Bret alleged that Saiyin had strangled him in the past, "a crime for which she was arrested and convicted in Snohomish County; her oldest son Koraphol was strangled by her; TJ, our 16 year old son was strangled by her as described above, and now the youngest child is the target of this kind of violence." CP at 123. He did not support several of these allegations with documentation.

On July 24, 2013, the court dismissed Bret's petition for a protection order. In a section of the order entitled "BASIS TO DISMISS," the court checked a box next to the words, "[t]he Court does not find sufficient evidence of domestic violence." CP at 120 . Bret moved for revision in superior court.

Prior to the hearing on revision, Bret filed a motion to shorten time. He argued that time was of the essence because he had learned that Koraphol had been convicted of crimes of violence, that Saiyin was leaving TJ and Samuel in Koraphol's care, that Koraphol had access to Chan's firearm, and that Koraphol had recently threatened TJ with violence. He argued that the children were "at risk, and the court should enter a

[protection order] on its own recognizance, and move up the time when the court can hear my motion for revision." CP at 45.

Saiyin filed a responsive declaration, alleging in part that Koraphol "did not threaten TJ or Sam," that "[t]he police that investigated TJ's report did not find that my son, Koraphol, had threatened TJ in any way," that Koraphol had moved out of her residence, and that "[t]here is no gun in our home." CP at 15.

The court denied the motion to shorten time, but imposed temporary conditions prohibiting Saiyin from allowing Koraphol in her home or using physical discipline until the hearing on the motion to revise. Following the hearing, the court denied Bret's motion to revise. He appeals.

## DECISION

The principal issue in this appeal is whether the superior court abused its discretion in denying Bret's motion to revise the dismissal of his petition for a domestic violence protection order. There was no abuse of discretion.

Decisions granting or denying protection orders are reviewed for abuse of discretion. In re Marriage of Stewart, 133 Wn. App. 545, 550, 137 P.3d 25 (2006). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). When an appeal is taken from a superior court's decision on a motion to revise a commissioner's decision, our review is of the superior court's decision, not the commissioner's. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). If, as in this case, the superior court denied the motion to revise without making findings of its own,

we deem that it adopted the findings and conclusions of the commissioner. State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007).

On the record provided, we cannot say the court abused its discretion in denying Bret's petition.[3] To obtain a domestic violence protection order, Bret had to prove the children were victims of "domestic violence," i.e., "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members [.]" RCW 26.50.010 (1)(a). As to the alleged incidents in 2013 involving Samuel and Koraphol, the trial court resolved conflicting evidence and credibility issues in Saiyin's favor. Those determinations are not reviewable on appeal. State v. Ainslie, 103 Wn. App. 1, 6, 11 P.3d 318 (2000) (appellate court defers to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony). The court was within its discretion in denying a protection order based on the alleged incidents in 2013.

With respect to the incidents in 2011 and 2012, Bret cites Muma v. Muma, 115 Wn. App. 1, 6-7, 60 P.3d 592 (2002) and Spence v. Kaminski, 103 Wn. App. 325, 334, 12 P.3d 1030 (2000) for the proposition that past acts of alleged domestic violence are sufficient to support a protection order so long as the victims have a present fear of harm. Although those cases are arguably distinguishable because they involved attempts to renew, or make permanent, existing protection orders, see In re Marriage of Freeman, 169 Wn.2d 664, 674-75. 239 P.3d 557 (2010), we need not resolve that

---

[3] Our review is hampered by the absence of a transcript or narrative report of proceedings for the hearings before Commissioner Stewart and the superior court. It was Brett's burden to provide this court with a record sufficient to review the issues raised on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

question here. Even assuming Bret is correct, the court did not abuse its discretion in declining to issue an order based on the alleged incidents in 2011 and 2012.

As noted above, DSHS determined that the 2011 and 2012 allegations were largely unfounded. While the allegation that Saiyin scratched TJ was founded, the court's exercise of discretion is supported by the nature and age of that incident, Saiyin's subsequent counseling, and the fact that any allegation of present fear on the part of the children is undermined by Bret's triangulation of them, his history of unfounded allegations, and Saiyin's statements in her declaration that Sam was doing well at home and that Bret was continuing to incite TJ. For essentially the same reasons, the superior court did not abuse its discretion in declining to issue a protection order based on any incidents of domestic violence allegedly occurring prior to 2011.

Bret next contends the court commissioner demonstrated bias and violated the appearance of fairness doctrine when he sua sponte dismissed the petition *with prejudice*. We disagree.

Trial courts are presumed to act "without bias or prejudice." West v. Ass'n of County Offical, 162 Wn. App. 120, 136, 252 P.3d 406 (2011). A party's allegations can overcome the presumption of impartiality if a reasonable person who knew and understood all the relevant facts would believe the judge might have a bias against the party. West, 162 Wn. App. at 137. Similarly, a judicial proceeding does not violate the appearance of fairness doctrine if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing. State v. Bilal, 77 Wn.App. 720, 722, 893 P.2d 674 (1995). No reasonable, disinterested person would

conclude that the dismissal with prejudice in this case demonstrated either bias or an appearance of unfairness.

Bret also challenges the temporary conditions in the order denying his motion to shorten time. Those conditions prohibited Saiyin from allowing Koraphol into her house or using physical discipline. He contends the court exceeded its authority and failed to abide by certain statutory requirements. These contentions are moot since the temporary conditions have long since expired and, by statute, were expunged from agency records upon expiration. RCW 26.50.100.

Last, Bret contends "[t]he Court abused its discretion in denying [his] motion for reconsideration and disallowing oral argument." Appellant Brief at 25. He claims the court denied his motion because it was "untimely; . . . the file was too burdensome to read; and . . . the motion should have been a special set." But he cites to nothing in the record supporting this claim.

Saiyin requests attorney's fees on appeal under RAP 18.1, RCW 26.09.140, RCW 4.84.185, and principles of intransigence. Because we conclude the appeal presents no debatable issues or reasonable possibility of reversal, we award fees and costs to Saiyin under RCW 4.84.185 and RAP 18.9, subject to her compliance with RAP 18.1. Bret's request for fees is denied.

Affirmed.

WE CONCUR:

- 9 -