**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>        v.<br><br>CHRISTOPHER COLLIN LESTER,<br><br>        Appellant. | No. 88956-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — After a bench trial, Christopher Lester was convicted of rape of a child in the first degree, child molestation in the first degree, incest in the first degree, and incest in the second degree. Before sentencing, Lester's defense attorney learned that during trial a court employee informed the trial court of the possibility of witness signaling, but the trial court did not inform the parties of this allegation during the trial.

Lester appeals and argues that the trial court's inaction on the allegation of witness signaling violated the appearance of fairness doctrine. Because a reasonably prudent and objective observer could conclude that Lester did not receive a fair, impartial, and neutral hearing, we agree.

We reverse and remand for a new trial before a different judge.

## I  FACTS

### A  Background

Lester married Amy LaPlante in July 2012.  LaPlante had two children from previous relationships, K.L.W. and J.M.K.  LaPlante, Lester, and the two children lived in a home in Soap Lake, Washington.  Lester was a father figure to the children.

Around January 2018, J.M.K. told LaPlante that Lester put his mouth on J.M.K.'s penis the day before.  K.L.W. told LaPlante that Lester had been touching her inappropriately as well.  Lester soon moved out of the family home, but LaPlante decided not to report him because she was afraid of Lester.

Around July 2019, LaPlante began a relationship with Alan Zufall.  LaPlante informed Zufall of what Lester had done to J.M.K. and K.L.W.  Zufall served Lester with LaPlante's divorce papers and told Lester that if he did not turn himself in, Zufall and LaPlante would report him.

On July 12, 2019, a few days after the encounter with Zufall, Lester told his boss he was quitting and drove to Grant County Integrated Services in Moses Lake.  Lester then spoke with a designated crisis responder (DCR) and disclosed that he had molested his two stepchildren.  The DCR then contacted law enforcement.

### B  Trial

The State charged Lester with rape of a child in the first degree, child molestation in the first degree, incest in the first degree, and incest in the second degree.

A trial was scheduled in the Grant County Superior Court.  Two days before trial, Lester waived his right to a jury trial.  After a bench trial, on November 13, 2023, the trial

court found Lester guilty on all counts. The trial court set a sentencing hearing for January 31, 2024.

## C Posttrial Events

On December 21, 2023, Lester's defense attorney ran into a second Grant County Superior Court judge outside the courthouse. The second judge told Lester's defense attorney that he heard from a jury administrator of the court that members of New Hope[1] were in the courtroom while K.L.W. and J.M.K. were testifying and were giving signals to them. Lester's attorney contacted the jury administrator, who told him that she heard members of New Hope coming up the stairs with K.L.W. and J.M.K. and said to one of them "remember this signal" and pulled her ear to demonstrate the signal. The jury administrator stated that she told the trial court about this allegation during Lester's trial.

At the scheduled sentencing hearing, the trial court made a record of the above timeline. The court explained that after hearing the allegation from the jury administrator it decided it would "keep a watchful eye to see if I see any indication of any signs going back and forth, as of course that would be horribly inappropriate." The court also explained that it remembered thinking that

> worst case scenario, as I do believe in any way that New Hope would ever be giving a sign to a witness on how to answer a question, but it may be something along the lines of if a person, especially a minor witness might need a break or they needed to speak up, that maybe there might be a sign for that. But even if that was true, it would be terribly inappropriate.

---

[1] New Hope is a victim/witness advocacy group.

And after seeing no indication during trial that any signs were given, the court "completely forgot about it after that." The court acknowledged that in hindsight it would have been better to bring the allegation to the attention of the attorneys during the trial. The State said that it would contact the employees at New Hope and explain the allegation and ask for a declaration. The trial court set a special hearing date and postponed sentencing.

Lester then filed a series of motions including: (1) a motion for the court to compel the attendance of all witnesses under its own "hand"; (2) a motion to withdraw as an attorney and appoint a new attorney; (3) a motion for the trial judge to recuse; (4) a motion for discovery of New Hope employees; (5) a motion to reverse convictions and dismiss charges; and (6) a motion for new trial. Lester argued that he was unaware of any meetings between the victims and New Hope, so he did not have an opportunity to cross-examine any witness about prior meetings with New Hope. Lester also argued that the appearance of fairness doctrine was violated by the trial court's inaction.

The trial court directed the State to subpoena witnesses for an evidentiary hearing to determine whether there were signals being given to witnesses during Lester's trial. The court denied the defense attorney's motion to withdraw as an attorney. The trial court determined a different Grant County Superior Court judge would be appointed to conduct the evidentiary hearing on witness signaling, citing the appearance of fairness doctrine. The trial court deferred ruling on Lester's motion for a new trial until after the evidentiary hearing.

The evidentiary hearing was held on March 12, 2024. After taking evidence, the judge presiding over the hearing concluded there were no signs or signaling during J.M.K.'s testimony.

The trial court then denied Lester's motion to dismiss and sentenced Lester to 318 months.

Lester appeals.

II

Lester argues that the trial court's failure to inform the parties of the allegation of witness signaling violated the appearance of fairness doctrine.[2] We agree.

Under the appearance of fairness doctrine, a judge must be both impartial and appear impartial. State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). A judge's impartiality might reasonably be questioned where a judge has a personal bias toward a party or a party's lawyer. See Code of Judicial Conduct (CJC) 2.11(A)(1). Additionally, under CJC 2.9(B), "[i]f a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." (Emphasis added.)

---

[2] Lester also argues that his due process rights were violated. We disagree. The United States Supreme Court has identified three categories in which there was an unconstitutional potential for bias in violation of the due process clause: (1) where a judge has a financial interest in the outcome of the case; (2) where a judge previously participated in a case in an investigative or prosecutorial capacity, and (3) when an individual with an interest in a case had a significant and disproportionate role in placing a judge on the case through the campaign process. State v. Blizzard, 195 Wn. App. 717, 727-28, 381 P.3d 1241 (2016) (citing Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 877-84, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)). Because none of these situations applies, we decline to reach the due process argument.

A judicial proceeding satisfies the appearance of fairness doctrine if a reasonably prudent and disinterested person would conclude that all parties received a fair, impartial, and neutral hearing. Tatham v. Rogers, 170 Wn. App. 76, 96, 283 P.3d 583 (2012). "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that 'a reasonable person knows and understands all the relevant facts.'" Tatham, 170 Wn. App. at 96 (quoting Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)).

We presume that a trial judge regularly and properly performs its job without prejudice or bias. West v. Wash. Ass'n of County Officials, 162 Wn. App. 120, 136, 252 P.3d 406 (2011). "To overcome this presumption, the party raising the challenge 'must provide specific facts establishing bias.'" Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co., 19 Wn. App. 2d 210, 218, 494 P.3d 450 (2021) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004)). A party need not prove actual bias, as a mere suspicion of partiality may be sufficient to require recusal. Tacoma S., 19 Wn. App. 2d at 218. But there must be more than mere speculation. Tatham, 170 Wn. App. at 96.

There is no dispute that the trial court did not inform the parties during trial about the allegation of witness signaling. We agree with Lester that this inaction violated the appearance of fairness doctrine. First, Lester was unable to address the allegation of witness signaling during trial, on the record. This deprived Lester of the opportunity at trial to inquire about the nature and extent of New Hope's involvement, request curative measures, or cross-examine witnesses about potential signaling or coaching. This could not be cured by the posttrial evidentiary hearing because J.M.K. had already

testified with New Hope in the courtroom and that evidentiary hearing occurred several weeks after J.M.K.'s testimony.

Second, an objective observer could view the trial court's statements after Lester learned of the allegation as evidence of bias. The court stated that it could not imagine that employees from New Hope were giving signals. This could be viewed as bias toward the State and New Hope. An objective observer could conclude that the trial court received ex parte information bearing on witness testimony, assumed New Hope's neutrality, and then kept the allegation to itself while serving as the fact finder. Lester does not need to prove the trial court's actions were malicious or that there was actual bias; instead, it is sufficient if there is an appearance of partiality.

Third, the trial court's failure to inform the parties of the witness signaling allegation conflicts with the CJC. The trial court had a duty to inform the parties of any ex parte communication that bears on the substance of the matter and provide the parties an opportunity to respond. CJC 2.9(B). This communication was not merely administrative or unrelated to the trial. The statement went directly to the credibility of the witnesses and the integrity of the proceedings. While a violation of the CJC alone may not violate the appearance of fairness doctrine, an objective observer could conclude that the trial court's action deprived Lester of a fair hearing since it directly impacted his criminal trial. See State v. Williams, 15 Wn. App. 2d 841, 850, 480 P.3d 1145 (2020) (holding that trial judge's violation of the CJC did not violate the appearance of fairness doctrine when there was no showing of impact on the case itself).

Fourth, and lastly, "[t]he CJC recognizes that where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating." Sherman, 128 Wn.2d at 205. The trial court's inaction here could taint public confidence in the judicial system. We cannot condone informal and off the record handling of serious trial irregularities or allegations. Because there is a basis to reasonably question whether Lester received a fair, impartial, and neutral hearing, we conclude that the trial court violated the appearance of fairness doctrine.

We reverse and remand for a new trial before a different judge.[3]

_Mann, J._

WE CONCUR:

_Birk, J._

_Chung, J._

---

[3] Lester makes other arguments on appeal including: (1) that improper ER 404(b) evidence was admitted; (2) that Lester's statements to police were improperly admitted; (3) that Lester's waiver of a jury trial was invalid; and (4) that Lester's due process rights were violated by appearing remotely for pretrial proceedings. Because we conclude that the trial court violated the appearance of fairness doctrine and remand for a new trial, we do not review these arguments.